F. AUGUST HEINZE, RESPONDENT, v. BOSTON & MONTANA CONSOLIDATED COPPER AND SILVER MINING COMPANY, APPELLANT,

AND

MONTANA ORE PURCHASING COMPANY, RESPONDENT, v. BOSTON & MONTANA CONSOLIDATED COPPER AND SILVER MINING COMPANY, APPELLANT.

[Submitted Feb. 16, 1898.  Decided March 7, 1898.]

*Injunction Pendente Lite—Discretion—Mining Claims.*

1. INJUNCTION PENDENTE LITE—*Discretion.*—The granting of a preliminary injunction is a matter of discretion, and the order will not be reversed in cases in which a reasonable showing in support of the application has been made in the lower court.

2. SAME—*Mining Claims.*—Where it is made to appear that the defendants by means of cars running along underground levels to which they alone have access, are removing valuable ores from mining ground, the title to which is in dispute, plaintiff is entitled to a preliminary injunction restraining the defendant from using the levels extending under the ground claimed by the plaintiff; and in such cases it is incumbent upon the defendant to show that the granting of the restraining order was a substantial abuse of judicial discretion.

*Appeal from District Court, Silver Bow County. William Clancy, Judge.*

ACTION by F. August Heinze against the Boston & Montana Consolidated Copper & Silver Mining Company, and by the Montana Ore Purchasing Company against the same defendant and another. From the granting of injunctions *pendente lite*, defendants appeal. Affirmed.

Statement of the case by the justice delivering the opinion.

In both these cases plaintiffs claim to be the owners of certain town lots in Faucett's addition to the City of Butte, and of the ores in and under the lots, together with the streets, alleys, etc., and allege that the defendants are removing the

ores from beneath the surface thereof, and converting the same to their own use. In both cases, after an order to show cause, the court below granted an injunction *pendente lite* against the defendants. The defendants appeal in both cases.

The principal error complained of by the appellants is the extent to which, they allege, the restraining orders go. It appears that the defendants claim to be the owners of the Pennsylvania lode claim, lying north of the town lots claimed by the plaintiffs, and the contention of the defendants is that they are not removing any ore which belongs to the plaintiffs, or either of them, but that they are following the dip of their own vein, which, they contend, extends beneath the surface of the town lots claimed by the plaintiffs, contending that they have a right to follow the dip of the vein for the purpose of extracting the ores therefrom. This contention is disputed by the plaintiffs, and the ownership of the ores involved in these cases evidently depends upon the question as to where the apex of the vein which the defendants claim to own is located,—that is to say, whether the apex is within the lines of the Pennsylvania lode claim, or whether the strike of the vein crosses the side line thereof, and, if so, at what point on the side line; and upon these questions, which the District Court was not required to decide and which we are not called upon to determine here, evidently depends the title to a large amount of ore underlying the ground in controversy. It seems that heretofore, and for some time, the defendants have been using certain drifts or levels, constructed by them across and underneath the surface of the town lots in question, along which they ran, and now run, their cars, for the purpose, as they claim of hauling ores mined from the Pennsylvania mining claim to their shaft. These cars have been run by the defendants along and through the fourth, fifth, and sixth levels, underneath the lots in controversy, and which extend into the Pennsylvania ground lying north of the lots in question. The defendants claim now, and did claim in the court, that as they were only using these drifts or levels, along which these cars ran, for the purpose of hauling the ores from the Pennsyl-

vania claim to their shaft, they were not injuring the plaintiffs in any way, and that it was necessary for them to use these drifts or levels for the running of their cars in order to mine the Pennsylvania claim, to the ores of which they say the plaintiffs assert no claim. This contention is not conceded by the plaintiffs, they alleging that these cars, and levels in which the cars are used, go through large bodies of ores belonging to them, and that a part of the ores which the defendants are moving from the ground by means of these cars belongs to the plaintiffs, or, at least, is claimed by them; in other words, that part of the ores the defendants are hauling with the cars is in dispute.

The court issued its injunction restraining the defendants "from in any manner entering into or upon said premises, or on any part thereof, and from passing through any levels, crosscuts, drifts, or underground openings made therein, or therein existing, or from running any cars through said openings, or tramming or hauling any material or ores through the same."

The defendants, after the original order of injunction of the District Court was made, moved the court to modify the same so as to permit the defendants to run their cars along the levels aforesaid, underneath the lots claimed by plaintiffs, for the purpose of hauling ores from the Pennsylvania claim proper, to which they allege plaintiffs assert no title. The court refused to modify the injunction as requested by defendants, and they also appeal from this order.

*Wm. H. De Witt, John F. Forbis,* and *Louis Marshall,* for Appellants.

*J. J. McHatton* and *Robt. B. Smith,* for Respondents.

PEMBERTON, C. J.—These two cases were argued and submitted together, as the facts and questions presented by the records are conceded to be the same in each case.

Counsel for the appellants do not particularly complain of the action of the District Court in enjoining them from ex-

tracting and removing ores from the ground in dispute in these cases, but insist that the court erred in restraining and preventing them from using the drifts and levels extending under the ground claimed by respondents, mentioned in the statement, for the purpose of running their cars in hauling ores, which they claim come from their own ground, to their shaft.

In *Anaconda Copper Mining Co.* v. *Butte & Boston Mining Co.*, 17 Montana 519, 43 Pac. 924, we held that the granting of a preliminary injunction *pendente lite* was so largely a matter of discretion that it would be sustained on appeal, · when there was a reasonable showing in support of the application therefor in the lower court. See cases cited in that case. We think this may be said to be the settled rule in this state. The question, then, for determination here is, was there such a reasonable showing before the District Court as to authorize that court to enjoin the appellants from running their cars along the levels underlying the ground claimed by respondents, for the purpose of hauling ores to which appellants contend the respondents cannot, and do not, assert title?

It cannot be disputed that the title to some of the ores and ground in controversy depends upon the question as to where, if at all, it shall in the trial of these causes be finally determined that the Pennsylvania vein in its strike crosses the south side line of that claim. It is fairly to be inferred, we think, from the records of these cases, that bodies of ore, more or less extensive and valuable, underlie the ground in dispute in this litigation. The levels which the appellants claim the right to use for the running of their cars pass through or near to these ore bodies. The appellants alone have access to these levels, for they constructed them and have used them ever since. By means of these levels and the cars used therein any ores under the ground in controversy might be removed, whether they be such as are in dispute or not. Under such circumstances, might not the District Court have reasonably concluded that there was a suffi-

cient showing to support the belief that the property or ores of the plaintiff were so far imperiled as to justify the issuance of an injunction *pendente lite* restraining the use by the appellants of their cars in and along the levels mentioned?

Might not the District Court, in view of the great value of the property in dispute,—that value depending so largely upon the value of the ores in dispute,—have thought that it would be a proper and discreet exercise of equitable jurisdiction to hold the property intact pending this litigation in order that, when the true ownership has been determined, the owner or owners may possess and enjoy it with its wealth and value preserved, and saved from the liability of receiving it at the end of these trials despoiled of its value, and forced, as per consequence, to a suit for damages, which remedy this court held in *Anaconda Copper Mining Co.* v. *Butte & Boston Mining Co.*, *supra,* "would be very inadequate?" In order to avoid such injurious results to litigants in these mining cases, where so much is so often involved, may it not reasonably and justly appear to trial courts that it is a proper exercise of their equity powers to preserve these large estates intact pending litigation involving their ownership? And if, from a consideration of all the facts and circumstances involved in such litigation, the District Courts so determine and act, is it within our province to say that they thereby abuse that sound judicial discretion which should control in the issuance of writs of injunction *pendente lite?*

The evidence in this case does not show with any such definiteness or certainty in or under what particular ground the ores in dispute are located as would enable the District Court to fix a line beyond which the appellants might or might not go in extracting ores or hauling them with their cars along the levels in question, so as to limit the extent to which the injunction might go. There are frequently questions involved in litigation, concerning the ownership of mines and mining claims, which distinguish it from controversies in relation to other classes of property. For instance: The issuing or refusing to issue, an injunction *pendente lite,*

in a case involving the right to the use of water to irrigate a ranch, may involve the value of a season's crop to one of the litigants, as well as the value of his time, etc.   But the issuing of such a writ in a mining case frequently involves principally, as in these cases, a question of delay.   The ores are preserved in the ground, and the owner is ordinarily only delayed for a time in extracting them by the injunction.   We are clearly of the opinion that, in cases like these, it devolves upon the party complaining to show that the District Court has been guilty of a substantial abuse of judicial discretion in the action assigned as error, before this court can be expected to interfere.   The records in these cases do not disclose any such abuse of discretion as to justify a reversal of the action of the District Court.

The judgment and orders appealed from in each of the above-entitled causes are therefore affirmed.

*Affirmed.*

Hunt and Pigott, JJ., concur.