MONTANA ORE PURCHASING CO., RESPONDENT, *v.*
BOSTON AND MONTANA CONSOLIDATED
COPPER AND SILVER MINING
COMPANY, APPELLANT,

AND

BOSTON AND MONTANA CONSOLIDATED COPPER
AND SILVER MINING COMPANY, APPELLANT, *v.*
MONTANA ORE PURCHASING COMPANY,
RESPONDENT.

TWO CASES.

[Submitted Feb. 17, 1898.   Decided March 7, 1898.]

*Easement—Injunction.*

1. EASEMENT.—The grant of an easement to flood and store water upon lands of the grantor will be construed to mean waters which the grantee used at or about the time of the grant, and will not be extended so as to allow the grantee the right to lay

pipes over the land of the grantor or his successors in interest for the purpose of storing other waters upon the premises.

2. SAME.—The predecessor of the defendant granted a right of way over the land in controversy, and subsequently granted to the predecessor of plaintiff the right to flood and store water upon so much of the premises as were situated east of the embankment constructed by the railroad company over its right of way. The railroad company granted to the plaintiff the right to raise the embankment and to use it as a dam. *Held*, that the railroad company had a right to raise its embankment to suit its convenience, subject to rights reserved in the deed of right of way, and that plaintiff had the right to use the embankment for the purpose of storing water in accordance with the easement granted to its predecessor. *Held*, further, that an order restraining defendant from constructing a box flume through the embankment was properly granted, when it appeared that it would be a danger to the whole embankment.

*Appeals from District Court, Silver Bow County. John Lindsay, Judge.*

ACTIONS for injunctions by the Montana Ore Purchasing Company against the Boston & Montana Consolidated Copper & Silver Mining Company, a corporation, and others, and by the Butte & Boston Consolidated Mining Company against the Montana Ore Purchasing Company. From an order refusing to dissolve the injunction in the first case, the defendants appeal, and from an order dissolving the injunction the plaintiff in the second case appeals. Reversed in part and affirmed in part in the first case, and reversed in second case.

*John Forbis, Wm. H. De Witt,* and *Louis Marshal',* for Appellants.

*J. J. McHatton,* and *Robt. B. Smith,* for Respondent.

HUNT, J.—These two appeals were argued together, and by agreement the testimony in case No. 1,175 is to be considered in No. 1,184. They will therefore be disposed of in this one opinion.

They are both actions for injunctions. In case No. 1,175, plaintiff, the Montana Ore Purchasing Company, had defendant Boston & Montana Consolidated Copper & Silver Mining Company enjoined from interfering with plaintiff in constructing an underground pipe line across certain ground belonging to defendants, and from constructing a box flume

through a certain railroad embankment, also constructed on ground belonging to defendants. From an order refusing to dissolve this injunction defendants therein appeal.

In case No. 1,184, the Butte & Boston Consolidated Mining Company, as plaintiff, enjoined the defendant the Montana Ore Purchasing Company from laying pipe for its own use across the same premises involved in case No. 1,175. In this case the court, upon the hearing, ·dissolved the injunction, from which order plaintiff therein appeals.

The respective parties are mining corporations, operating mining and smelting works, the successful conduct of which requires quantities of water. The Butte & Boston Consolidated Mining Company is the owner of the ground over which this controversy arose. But on November 16, 1892, the predecessor in interest of the defendants entered into an agreement and lease with one F. A. Heinze, plaintiff's predecessor in interest, wherein Heinze leased a certain concentrator and smelting plant for a period of years. These works have been used since such time.

In the lease and agreement last referred to, there was the following provision: "It is also agreed that the said lessee shall have the right to flood and store water upon any of the ground of the party of the first part lying east of the embankment of the north leg of the Y of the Northern Pacific Railway, as now constructed; and also the right to dump 'tailings' from any and all works erected on the leased premises by the second party on to any ground of the party of the first part east of the Montana Union Railway Company's tracks and north of the embankment of the Northern Pacific Railway Company above mentioned, to wit, about the place where the 'tailings' from the concentrator of the Boston & Montana Consolidated Copper & Silver Mining Company's lower works are now being deposited; it being the intention of the parties hereto that the rights of storing water and dumping tailings and all rights of any kind mentioned in this indenture are to and shall belong to said second party under any extension of this lease."

Prior to the execution of the foregoing lease, to wit, on December 4, 1891, the predecessors in interest of the defendants entered into an agreement and lease with the Northern Pacific and Montana Railway Company, whereby the defendants' predecessors in interest granted and sold to the said railway company an easement for right of way on, over, and across the premises involved in this action. The mining company, as grantor, reserved to itself the minerals below the surface, and the right to explore for and extract the same, provided that in the exercise of any mining rights there should be no danger to the roadbed of the grantee railway company. There was also reserved a right to use such portions of the right of way conveyed as might not be in actual use by the railroad company for railroad purposes, and to dump ore and waste thereon, and to erect necessary buildings and other improvements for mining purposes upon said ground not in actual use, provided that, if the railroad company required any portion of the right of way so occupied or used by the mining company, upon notice the mining company was to remove any improvements or obstructions down to the grade as established at the time of the agreement.

On July 2, 1892, the Northern Pacific Railroad Company leased to the predecessors of the plaintiff herein its right of way on the east side of its main track as the same was then located upon certain premises, the portion leased extending from the Y connection, as shown upon a plat referred to in the lease, to a connection with the Montana Union Railroad, lying to the north of the said Y connection, as marked upon such plat. The railroad company in the lease granted the plaintiff's predecessors the right to use its embankment, upon which its railroad had been constructed, to serve as a dam for the purpose of storing water upon the right of way so leased. The plats offered for examination by the court show that the tract of land involved, and upon which the plaintiff had the right to flood and store water, lies between the roadbed of the Northern Pacific Railway Company on the one side and the hill on the other, and is part of a large tract of land desig-

nated as "Mineral Application No. 685," which belongs to the appellant the Butte & Boston Consolidated Mining Company.

It is conceded that since the original grants to it the plaintiff has used a portion of the ground within the limits of the right of way and along the embankment of the railroad company, has flooded the same, and stored water thereon. It is stated by counsel that the water so stored came from Silver Bow creek.

About July 11, 1897, the plaintiff, claiming certain rights to the use of some of the waters of a stream in Park canyon, a creek in the vicinity of the water already stored, dug a ditch across the southeasterly part of mineral application No. 685, and attempted to bury boxes therein to conduct such newly acquired and additional waters from Park canyon over to the storage basin. The distance from the point of plaintiff's entry upon mineral application No. 685 to the water already stored was about 1,400 feet. In plain words, plaintiff the Montana Ore Purchasing Company wanted more water for its concentrator, and was attempting to prepare to convey an increased supply across lands of the Butte & Boston Mining Company, when they were enjoined in this proceeding. Plaintiff had, with the railroad company's consent, increased the height of the railroad embankment referred to, which operated as a dam, some time prior to the attempt just mentioned, so that it had increased its storage capacity before it undertook to increase its water supply in the manner indicated.

By these several actions the question for decision now arises upon the provision of the agreement and lease, heretofore quoted, between defendants and plaintiff's predecessors in interest. It is argued by plaintiff that it is the owner by grant of an easement in the land of defendant, and that it has a right to such an occupancy and use of the land across which it proposed to lay its water boxes as will enable it to enjoy the easement. It is insisted that the grant of a right to flood and store water east of the Y of the north leg of the Northern Pacific Railroad is a grant sufficiently large to enable

plaintiff to occupy the whole of mineral application No. 685
for flooding and storage purposes, if situate east of such north
leg; and that a right to procure water, and to conduct the
same on to said mineral application No. 685, was implied in
the grant as a matter of law. It says that to deny its right
to convey water to the premises is nothing less than a denial
of its right to store water thereon. We are of a different
opinion.

The right to flood and store water which the plaintiff enjoys
is an easement. As the owner of this estate, plaintiff has a
right over the land of the defendant. The estate of the
plaintiff is a dominant one; that of the defendant a servient
one. Let us grant, for present purposes, that the enjoyment
of the easement was not confined to any portion of the prem-
ises described in the deed, and that plaintiff could flood and
store water upon the whole thereof, yet, conceding all these
things to be true, it does not follow therefrom that a grant of
a right to flood and store water even upon the whole tract de-
scribed necessarily carried with it the further right to lay
pipes across the land of the defendant, by means of which the
water to be flooded and stored was to be conveyed, where the
pipes or boxes were not necessary or in use at or about the
time the easement was granted. Giving full force to the
doctrine as laid down by Washburn on Easements, page 42,
that "the grant of a thing carries all things as included with-
out which the thing granted cannot be enjoyed;" still, as
further held by that author, the principle is subject to limita-
tions "by which the things granted are understood to be
things incident and directly necessary to the thing granted."
It is not claimed that any easement to convey water to the
land existed as in use at the time of the grant except from
certain sources other than the ones now sought to be utilized.
In making the grant the defendants' predecessors in interest
did not undertake to enlarge it so as to include a right to dig
up the soil and lay pipes therein. All they did was to specify
what the grant was,—to name the purposes and give its extent
and direction. Therefore, unless the proposed use of the de-

fendants' ground to lay pipes therein is necessary for the enjoyment of the flooding or storage of water for plaintiff's use, no construction of the grant can be adopted which authorizes such a use. The object of the grant, of course, was to provide a place to store water for plaintiff's mining uses. The means by which this object was to be attained at the date of the grant were by waters brought on to the ground from Silver Bow creek, or, it may be, other sources, but clearly in a different direction from the ditch or flume proposed to be laid from Park canyon. It is evident that water is necessary to enable the storage basin to be used for the purposes intended, and it sufficiently appears that the right to conduct the waters of Silver Bow creek to the land was a use presumed to be within the purview of the parties. This is a reasonable construction, for without it the grant would have been of no benefit to the grantees all these years. But, inasmuch as the digging of a trench across defendant's land to conduct the water of Park canyon to the ground does not appear to be necessary, but may be a convenience only, the right to so dig is not granted.

In *Lyman* v. *Arnold*, 5 Mason, 195, Fed. Cas. No. 8 626, Story, J., said: "There may be many conveniences which yet do not pass as incidents to a grant. When the parties make their contracts, it is their duty to provide for such conveniences. When the law is called upon to interpret their acts, it has nothing to do with such matters. It can only act upon necessary incidents or implications."

In *Jennison* v. *Walker*, 11 Gray 423, the defendant relaid pipes for the conveyance of certain water through the land of plaintiff, not in the line or direction in which certain logs were originally placed after a deed granting the easement was made, but in a different direction, occupying another portion of the land belonging to the plaintiff. It was held that defendant gained no such right under the grant of the easement, the court saying that there was no grant of a right to construct more than one passage for water, nor to change the direction of the one first constructed, at the pleasure of the grantee.

In *McDonald* v. *Lindall*, 3 Rawle 492, it was expressly laid down that the right of way from necessity over the land of another "is always of strict necessity, and this necessity must not be created by the parties claiming the right of way. It never exists where a man can get to his property through his own land. That a road through his neighbor's would be a better road, more convenient, or less expensive, is not to the purpose; that the passage through his own land is too steep or too narrow does not alter the case. It is only where there is no way through his own land that the right of way over the land of another can exist."

So, in this case, doubtless, it would be a less expensive method of getting water into the storage basin of the plaintiff herein to run its pipe line across the land of defendants than to condemn the way selected or to find another; but it is by no means apparent that the necessity exists for the plaintiff to select a route which requires it to dig trenches through the defendants' land.

*Onthank* v. *Railroad Co.*, 71 N. Y. 194, was an action of trespass. It appeared that one Brown, whose farm adjoined the plaintiff's, executed to a railroad company a deed granting to it and its successors and assigns forever the right to enter upon his land, to build and maintain a reservoir for water, and to lay down and maintain an iron pipe or conductor to carry the water from said reservoir to the water tank at Portland station, and also a right to build and maintain ditches to conduct the water to the reservoir. The plaintiff, who knew of the contents of the deed of Brown, executed to the same railroad company a deed, granting it a right to enter upon his land for the purpose of laying down and keeping in repair an iron pipe to carry water to the water tank near the Portland station. The defendant succeeded to the rights of the grantee in those deeds. It appeared that there was a spring at the time of the granting of the deeds on Brown's land, which flowed over the land of plaintiff's. The water was collected, and a two-inch pipe was laid by the grantee from the reservoir across Brown's land to the Portland station. Eight years after this

pipe was laid, the defendant improved the reservoir, and put down a four-inch pipe instead of the two-inch, thus diverting an increased quantity of water.    The court decided that, after the grantee had once laid its pipe, and thus selected a place where it would exercise its easement thus granted in general terms, "what was before indefinite and general became fixed and certain, and the easement could not be exercised in any other place.    This is confessedly so in reference to the rights of way granted in similar terms."    It was further held that the language used in the grant showed that it was not intended that, after the grantee had laid down a pipe, it should have the right to enter upon the land, and lay down a larger pipe. "The right granted," said the court, "was to enter upon the land and lay down a pipe two feet below the surface, and to keep that pipe in repair; not to enter upon the land at any time and dig up the soil, for the purpose of laying down a larger pipe."

The reasoning of these cases confirms us in the belief that the acts of the parties and the use of the easement granted for flooding and storage purposes, when considered for the purpose of arriving at the intention of the parties to the deed in question, excluded from the easement granted a right to lay pipes to conduct water across the land of the defendant, except such as existed at and about the time of the execution of the grant itself.    (See, also, *Turnbull* v. *Rivers*, 3 McCord, 131.)

Upon this branch of the case we think the District Court erred in refusing to dissolve the injunction.

2. We next pass to the contention of appellants that the court erred in refusing to dissolve the injunction whereby the respondents were prohibited from putting a flume through the railroad embankment at a point where such embankment was used as a dam to hold plaintiff's stored water.

In presenting their side of this feature of the controversy, the appellants lay great stress upon the character of the rights leased by the railroad company to the plaintiff, whereby the said railroad company gave plaintiff a right to use its bank

upon which the railroad is constructed to serve as a dam for the purpose of storing water.     We are urged to hold that, the grant of the defendants' predecessors to the railroad company being only "an easement for right of way on, over and across" the ground in question, it followed that under this grant the railroad company had no power to grant the plaintiff herein the right to use its said embankment as a dam.

It appeared on the hearing that the railroad company, under an agreement with plaintiff, and at plaintiff's expense, increased the height of its embankment, which constituted the dam or west side of the storage basin of plaintiff's, the object of this increase in height having been to enable plaintiff to raise the height of the dam lying east thereof so as to store more water.     Of this the appellants also complain.     But, in our opinion, the railroad company, under the grant to it, clearly had a right to maintain its roadbed and to raise or lower the height thereof as its necessary convenience demanded, subject always to the reserved rights of the deed. Furthermore, the plaintiff had a right by grant from defendants to flood and store water east of the embankment of the company, because such embankment is the one upon which the north leg of its Y rests.     Now, if the appellants are not seeking to avail themselves of some right reserved to them in their grant to the railroad company (and they are not), and if the plaintiff is strictly in the enjoyment of merely the right granted to it to flood and store water east of the embankment (as it is), how can these appellants claim they are injured by the exercise of that right because plaintiff avails itself of an embankment constructed for a roadbed, when such construction was proper, and under their own authority or grant? Moreover, the railroad company is not a party to this suit, and, so long as plaintiff has not exceeded any rights granted to it by appellants, they cannot ask the court in this proceeding to determine the precise extent of the railroad company's rights.

But we can rest our decision of this matter upon another point.     It evidently satisfactorily appeared to the lower court

by the testimony that appellants were not intending to use the box or sluices which they wished to put into the embankment for any beneficial purposes.   It was in evidence that the place where appellants were trying to put the box in was below the point where plaintiff's water line might often come, and that to allow the box to remain would be a danger to the whole embankment.   Under such a condition of facts there was certainly no abuse of discretion on the part of the court in refusing to dissolve the injunction in this respect.

It is therefore ordered that in case No. 1,175 the order of the District Court refusing to restrain the Montana Ore Purchasing Company from laying a pipe, or from constructing and maintaining a ditch or flume upon and over that parcel of the ground designated as "Mineral Application No. 685," be and the same is hereby reversed at the cost of respondent.

*Reversed.*

And it is further ordered that the order of the court refusing to dissolve the injunction restraining the Boston & Montana Consolidated Copper & Silver Mining Company, and the Butte & Boston Consolidated Mining Company, Frank Klepetko, C. S. Batterman and Robert White, from interfering with, breaking or destroying that certain embankment underneath and along the north branch or spur of the Northern Pacific Railroad Company, westerly from mineral application No. 685, and from making any openings through said embankment for the purpose of placing a flume therein, be, and the same is hereby affirmed, at the costs of appellants.

*Affirmed.*

The order of the District Court dissolving the injunction in case No. 1184 is reversed.

*Reversed.*

It is further ordered that the causes be remanded with directions to proceed in accordance with the views herein expressed.

PEMBERTON, C. J., and PIGOTT, J. concur.