PARROT SILVER & COPPER COMPANY, RESPONDENT,
*v.* HEINZE ET AL., APPELLANTS.

(No. 1,601.)

(Submitted January 18, 1901.    Decided March 11, 1901.)

*Mines—Mining Location—End and Side Lines—Extralateral Rights—Common Law Rights—Strike of Vein—Crossing side Line—Crossing End and Side Line—Appeal—Injunction.*

| 25 | 139 |
| 25 | 192 |
| 25 | 198 |
| 25 | 431 |
| 25 | 514 |
| 25 | 519 |
| 25 | 520 |
| 25 | 139 |
| 27 | 430 |
| 25 | 139 |
| 30 | 161 |
| 30 | 488 |
| 25 | 139 |
| 41 | 555 |

1.  Where the owner of a mining claim sought to restrain the owner of a neighboring claim from removing ore from beneath the surface of plaintiff's claim, and the issue was as to the course of defendant's vein across his claim, and the evidence was conflicting, *held,* that the granting by the lower court, after a hearing, of an injunction *pendente lite*—being so largely a matter of discretion, would be sustained upon appeal, there being substantial evidence tending directly to support plaintiff's contention as to the strike of the vein.

2.  The granting of a preliminary injunction will be sustained upon appeal where there has been a reasonable showing made in support of the application in the court below.

3.  Where a vein on its course crosses two opposite side lines of the mining claim, such side. lines thereby become in fact end lines, and the locator cannot follow the vein, either on its dip or strike, beyond vertical planes drawn through the side-end lines.

4.  Where the apex of a vein passes through one of the parallel end lines and a side line, the extralateral rights of the locator are bounded by the vertical plane of such end line and a parallel plane extended downward through the point where the apex crosses the side line.

5.  A grant from the United States under the laws regulating the disposition of mineral lands differs from a common law grant in two respects only, towit:   (1) it is enlarged by the addition to it of certain conditional extralateral rights, and (2) it is subject to the conditional extralateral rights of neighboring locators or patentees or their successors.

6.  Under Revised Statutes of the United States, Sec. 2322, where the apex of a vein is in defendant's location, but he has no right to follow it beyond the vertical plane of his south line owing to such line being an end line, plaintiff, whose location is situated south of that of defendant, is entitled, as against defendant, to the ores of said vein beneath plaintiff's surface.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

SUIT by the Parrot Silver & Copper Company against A. P. Heinze and others to determine the title to ore bodies beneath the surface of plaintiff's mining claim, and for injunction *pendente lite* to restrain defendants from removing ore therefrom. From an order granting the injunction, defendants appeal. Affirmed.

*Messrs. McHatton & Cotter* and *Mr. J. M. Denny,* for Appellants.

*Mr. William Scallon, Mr. T. J. Walsh* and *Mr. J. K. MacDonald,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the Court.

Action in the nature of ejectment to determine the title to certain openings and ore bodies beneath the surface of the Adventure mining claim, situate in Silver Bow county. The plaintiff, upon filing the complaint, asked for an injunction *pendente lite* to restrain defendants from removing the ores in question. From an order granting the injunction the defendants have appealed.

The principal question presented by the appeal can best be understood by reference to the subjoined diagram, which illustrates the contentions of the parties:

The plaintiff is the owner of the Adventure claim, with all the rights conferred by a patent thereto from the United States. The defendant F. Augustus Heinze is the owner of thirty-one undivided thirty-sixths of the Nipper claim, also patented, lying to the north. When this controversy arose the defendant Arthur P. Heinze was in possession of the Nipper claim as lessee of the interest of F. Augustus Heinze, and was engaged

in mining and extracting ore at the point O, beneath the surface and within the vertical planes passing downward through the boundaries of the Adventure claim.    These operations were conducted through a "working winze" descending into the earth from the surface within the boundaries of the Nipper claim at A, and following the vein on its dip to the south at an angle of about 75 degrees through the intervening country to the point O, at a depth of 1,300 feet below the surface.    The plaintiff admits that the ore bodies at this point have their apex in the Nipper claim, but contends that the evidence shows that this apex, instead of crossing the end lines of the Nipper claim, follows the course indicated by the line B, B, B, passing across the north side line of the Nipper into the Little Mina at X, toward the northwest, and through the south side line into the Oden claim at H, and thence across the east end line of the Oden into the Anaconda, toward the southeast.    This being the condition of the vein, it is confidently asserted that the Nipper claim has no extralateral rights, and that, therefore, since none of the intervening claims have any part of the apex, so as to give them extralateral rights, the ore bodies in controversy belong to the plaintiff by virtue of what counsel assert are its common-law rights.

Defendants on their part contend that the evidence shows that the apex of the vein, as demonstrated by developments at and beneath the surface within the boundaries of the Nipper claim, follows the general direction of the side lines from near the west end line, through the point of discovery at D, and crosses the south side line into the Anaconda at a point near the southeast corner of the Nipper claim.    The position of the vein under this contention is indicated by the letters C, C, C. There is some evidence to show that there is also a branch of this vein passing off in the direction indicated by the letter G.

There is a sharp conflict in the evidence introduced to support these adverse contentions as to the strike of the vein.    The district court issued the injunction after a hearing.    It is evident, from the situation as illustrated by the diagram, that that

court found in favor of plaintiff's contention. Otherwise, its action cannot be justified upon any reasonable theory; for, if the theory of the defendants is correct, it is clear that, in following the vein on its dip, they are merely asserting their extralateral rights granted under their patent, though in doing so they pass entirely through the adjoining claims on the south and enter plaintiff's claim.

Upon the evidence submitted the district court might have found in favor of defendants' contention; as it did not, however, and as there is substantial evidence tending directly to support plaintiff's contention, we do not feel justified in holding that the showing made by plaintiff was not reasonable, or that the court abused its discretion in finding as it did. The rule heretofore applied by this Court in this class of cases is that the granting of a preliminary injunction is so largely a matter of discretion that it will be sustained, upon appeal, where there has been a reasonable showing made in support of the application in the court below. (*Anaconda Copper Min. Co.* v. *Butte & B. Min. Co.,* 17 Mont. 519, 43 Pac. 924; *Montana Ore Purchasing Co.* v. *Boston & M. Consol. Copper & Silver Min. Co.,* 20 Mont. 528, 52 Pac. 273; *Butte & B. Consol. Min. Co.* v. *Montana Ore Purchasing Co.,* 21 Mont. 539, 52 Pac. 375; *Montana Ore Purchasing Co.* v. *Boston & M. Consol. Copper & Silver Min. Co.,* 22 Mont. 159, 56 Pac. 120.) For present purposes, therefore, we shall assume the finding in favor of plaintiff as to the course of the vein through the Nipper claim to be correct, and proceed to determine the legal question presented upon this theory of the case.

From this point of view it is apparent that the apex of the vein, in its course through the Nipper claim, crosses both side lines. The defendants, therefore, have no right to follow the vein on its dip in the direction of the Adventure claim. The supposed side lines of the Nipper claim are in fact end lines, and whatever rights its owners have to follow the vein in the direction of the Adventure are limited by a vertical plane passing downward through the south side line extended in its own

direction towards the west. "It may be considered as absolutely and finally settled that, where a vein on its course crosses two opposite side lines, the vein cannot be followed, either on its dip or strike, beyond vertical planes drawn through the side-end lines, and that the angle at which it crosses these side lines makes no difference in the application of the principle." (2 Lindley on Mines, Sec. 588.) This is a concise statement of the present condition of the law upon this subject as declared by the Supreme Court of the United States in *Flagstaff Silver Min. Co.* v. *Tarbet,* 98 U. S. 463, 25 L. Ed. 253, in *Iron Silver Min. Co.* v. *Elgin Mining & Smelting Co.,* 118 U. S. 196, 6 Sup. Ct. 1177, 30 L. Ed. 98, in *Argentine Min. Co.* v. *Terrible Min. Co.,* 122 U. S. 478, 7 Sup. Ct. 1356, 30 L. Ed. 1140, in *King* v. *Amy and Silversmith Mining Co.,* 152 U. S. 222, 14 Sup. Ct. 510, 38 L. Ed. 419, and in *Last Chance Min. Co.* v. *Tyler Min. Co.,* 157 U. S. 683, 15 Sup. Ct. 733, 39 L. Ed. 659; and the question as to what are the extralateral rights of the owner of a claim in which the apex is situated as in the Nipper is not now open to further discussion.

It is equally as well settled by the adjudicated cases that the extralateral rights of the owners of the Oden claim, lying to the south between the Nipper and the Adventure, if they have any at all upon the vein in question, are limited toward the west by a vertical plane passing downward through the point H, and parallel with the east end line of that claim. Assuming that the end lines of the Oden are parallel, a condition is presented which was considered by this Court in *Fitzgerald* v. *Clark,* 17 Mont. 100, 52 Am. St. Rep. 665, 42 Pac. 273, 30 L. R. A. 803, and the conclusion there stated is that, where the apex of the vein passes through one of the parallel end lines and a side line, the extralateral rights are bounded by the vertical plane of such end line and a parallel plane passing downward through the point where the apex crosses the side line. This case was affirmed on appeal by the Supreme Court of the United States (171 U. S. 92, 18 Sup. Ct. 941, 43 L. Ed. 87) upon the authority of *Del Monte Min. & Mill. Co.* v. *Last*

*Chance Min. & Mill. Co.*, 171 U. S. 55, 18 Sup. Ct. 895, 43 L. Ed. 72, decided on the same day. If the end lines are not parallel, the owners of the claim have no extralateral rights.

It thus appears that neither the owners of the Nipper nor of the Oden have, by virtue of their title to the portion of the apex within their respective boundaries, the right to follow the vein on its dip into the ground underlying the Adventure; in other words, these claims have no extralateral rights in the direction of the Adventure.

The question presented for determination upon this condition of affairs may therefore be stated thus: Assuming that the apex of the vein from which the appellants are extracting ore beneath the Adventure surface is in the Nipper ground, and that the vein in its strike crosses both of the side lines of the Nipper, so that the owners of the Nipper may not follow the vein on its dip to the south; can the plaintiff, who owns the Adventure claim, successfully assert title to the ores in that part of the vein beneath its surface and within the planes of its exterior boundaries? The defendants insist that it cannot do so, because, not having the top or apex of the vein within the exterior boundaries of the Adventure claim, it has no title to the part of the vein lying under the surface, notwithstanding defendants have no title thereto. In other words, this part of the vein was not granted to the plaintiff by its patent, and therefore the defendants, though without title themselves, commit no wrong upon plaintiff in entering beneath the surface and taking away ores to which it has no title. This contention has no foundation either in law or reason. Under the common-law rule as adopted in this country, a grant of lands without specific reservation conveys all rights above and beneath the surface, *usque ad coelum et ad orcum.* It is not uncommon, however, for such conveyances to make reservations of rights both above and below the surface, and the fact that this is true in a particular case in no way affects the validity of the particular conveyance.

In what respect does a grant from the United States under

the laws regulating the disposition of mineral lands differ from
a common-law grant? To reach a solution of this question, re-
gard must be had to the statute itself. Section 2322 of the
Revised Statutes of the United States provides: "The locators
of all mining locations heretofore made, or which shall here-
after be made, * * * shall have the exclusive right of
possession and enjoyment of all the surface included within
the lines of their locations, and of all veins, lodes and ledges
throughout their entire depth, the top or apex of which lies
inside of such surface lines extended downward vertically,
although such veins, lodes or ledges may so far depart from
a perpendicular in their course downward as to extend outside
the vertical side lines of such surface locations. But their
right of possession to such outside parts of such veins or ledges
shall be confined to such portions thereof as lie between vertical
planes drawn downward as above described, through the end
lines of their locations so continued in their own direction that
such planes will intersect such exterior parts of such veins or
ledges. And nothing in this section shall authorize the locator
or possessor of a vein or lode which extends in its downward
course beyond the vertical lines of his claim to enter upon the
surface of a claim owned or possessed by another." If this
section stood alone, it would seem to restrict the rights of the
locator to the use and enjoyment of the surface only for the
purpose of following the vein upon its strike and dip under
the prescribed limitations as to adjoining lands. Reading this
in connection with the other provisions of the chapter, how-
ever, we find that it is "lands valuable for minerals" which are
reserved from sale except as otherwise directed; it is "lands"
in which the deposits are found which are open to occupation
and purchase; it is "land claimed and located for valuable
deposits" for which the patent may be obtained; and it is by
virtue of the title secured to *land* that the purchaser obtains
any right whatever with reference to mineral deposits therein.
Upon a valid location of a definite portion of *land* is founded
the right of possession. The patent grants the fee, not to the

surface and ledge only, but to the *land* containing the apex of the ledge. The right to follow the ledge upon its dip between the vertical planes of the parallel end lines extending in their own direction, when it departs beyond the vertical planes of the side lines, is an expansion of the rights which would be conferred by a common-law grant. On the other hand, this grant is subject to the right of an adjoining locator to follow his vein upon its course downward beneath the surface included in the grant. In these two respects only do the rights conferred by the statute differ from those held under a common-law grant. "Except as modified by the statute, no reason is perceived why one who acquires the ownership or possession of such lands should not hold them with and subject to the incidents of ownership and possession at the common law." (*Doe* v. *Waterloo Mining Co.* (C. C.) 54 Fed. 935; *Leadville Mining Co.* v. *Fitzgerald*, 4 Mor. Min. Rep. 385, Fed. Cas. No. 8,158.)

The passage quoted from the opinion of Judge Ross in *Doe* v. *Waterloo Mining Co., supra,* is directly in accord with the view expressed by the Supreme Court of Dakota in *Duggan* v. *Davey*, 4 Dakota 110, 26 N. W. 887, as well as with the result of *King* v. *Amy and Silversmith Mining Co., supra.* In the latter case the defendant was the owner of the Amy claim. The plaintiff and the defendant were tenants in common in the Non-Consolidated claim, having a common boundary with the Amy on the north. The apex of the vein in the Amy crossed both side lines and passed into the Non-Consolidated across the common boundary. The defendant had taken a large amount of ore from within that portion of the Non-Consolidated east of a plane passing downward through a line parallel with the end lines of the Amy at the point where the vein passed into the Non-Consolidated. This Court (9 Mont. 543, 24 Pac. 200) held that this ore belonged to the defendant by virtue of its right to follow the vein on its dip toward the north. Upon appeal the Supreme Court of the United States reversed the judgment of this Court, holding that the side lines of the Amy were its end lines, that the extralateral rights of the defendant

toward the north were limited by the vertical plane of the north side line; and that the plaintiff, in addition to a decree of partition demanded as the principal relief, was entitled to an accounting for the ores in controversy. By reference to the diagram in the opinion in 9 Mont. 569, 24 Pac. 201, it will be seen that the apex of the part of the vein to which the ore in controversy belonged was not in the Non-Consolidated, but in the Amy claim; and upon no other theory can the judgment of the Supreme Court of the United States be justified than that the owners of the Non-Consolidated were entitled to the ore by virtue of their common-law right under their patent. The same may be said of the result of the judgment in *Iron Silver Min. Co.* v. *Elgin Mining & Smelting Co., supra,* where similar conditions existed as to the apex of the ore in controversy.

Under the provisions of the statute, as they have been construed by these and the other cases heretofore cited, it is only the locator, or his successor, or a patentee, who has any right to follow a vein into the boundaries of an adjoining owner, and the latter, holding under a location or patent, is *prima facie* entitled to everything beneath his surface. He may assert this *prima facie* title to prevent intrusion by any one who cannot show that he comes with the right acquired by a compliance with the provisions of the statute. This conclusion is also in accord with the spirit of all the statutes regulating the disposition of the public lands, which make it manifest that it is the policy of the government to grant every right therein, except where express reservation is made.

Defendants cite and rely upon *Montana Co.* v. *Clark* (C. C.) 42 Fed. 626, and *Driscoll* v. *Dunwoody,* 7 Mont. 394, 16 Pac. 726, as conclusive of their contention. It is true that in *Montana Co.* v. *Clark,* Judge Knowles reached a conclusion directly contrary to that here stated, but that case is contrary to all the authorities so far as we are advised, and does not meet with our approval. The case of *Driscoll* v. *Dunwoody* is not pertinent, as it does not deal with any phase of the question involved in the case at bar.

The hearing in the court below was upon oral evidence and affidavits. Objection was made by defendants to the introduction of two of the affidavits offered by plaintiff, on the ground that they were immaterial and incompetent. The objection was overruled. Defendants allege error. We have examined the affidavits in question, and conclude that the court committed no prejudicial error in admitting and considering them. One of them was immaterial, but it is apparent that, if it had been excluded, the result would not have different.

The order of the district court is affirmed.

*Affirmed.*