## HUDSPETH COUNTY CONSERVATION AND RECLAMATION DIST. NO. I et al. v. SPEARS & CO. et al.

### No. 2577.

Court of Civil Appeals of Texas. El Paso.
May 8, 1931.

O. R. Armstrong and Frank B. Clayton, both of El Paso, for appellants.

Kemp & Nagle and Turney, Burges, Culwell & Pollard, all of El Paso, for appellees.

PELPHREY, C. J.

This is an appeal from an order overruling a motion to dissolve a temporary injunction. The suit is by Spears & Co., a corporation, El Paso Cotton Industries, Inc., a corporation, hereinafter called cotton industries, Fred Deerman, M. A. Cox, W. A. Thomasson, and Tom Locke, against Hudspeth county conservation and reclamation district No. 1, hereinafter called the district, the directors of said district, who were sued both as directors and as individuals, A. M. Easterday, engineer of said district, who is sued as such and as an individual, and G. E. Spinnler. The suit was filed March 30, 1931.

The petition is lengthy. A summary of its material allegations is as follows:

The district is incorporated under the laws of Texas, among other things, organized to operate an irrigation and drainage district in the Rio Grande Valley in Hudspeth county, and has heretofore issued interest-bearing bonds in the sum of $700,000. Spears & Co. own and control about 12,000 acres of land within the district, of which about 7,000 acres are capable of irrigation upon the establishment and maintenance of proper drainage and irrigation canals. Of said 7,000 acres about 1,792 acres have not been cleared for irrigation because the drainage system is inadequate to drain same, but said 1,792 acres are taxed as irrigable lands and compelled to bear their pro rata of the expense of the district amounting to $6 per acre; that of the remaining 5,200 acres some is not subject to effective cultivation at this time because of inadequate drainage, though said 5,200 acres are charged with the sum of $9 per acre annually; said lands of Spears & Co. constitute 40 per cent. of the land in the district now subject to irrigation, cultivation, and payment of the expenses of the district, including the payment of its bonds and interest. The profitable cultivation of the land depends equally upon an adequate system of irrigation and an adequate system of drainage. February 1, 1930, Spears & Co. leased to Cotton Finance & Trading Corporation all of its irrigable lands in the district, and with the consent of Spears & Co. said Cotton Finance & Trading Corporation transferred all of its rights to the cotton industries which entered into possession and control of said lands. During the months of January and February, 1931, the cotton industries leased to the individual plaintiffs above named certain of said lands, the amount leased to each of said individuals be-

ing stated. The land so leased to said individuals is taxed by the district for water service at the rate of $9 per acre, whether the same can be profitably cultivated or not, and Spears & Co. have paid at that rate in the past. Since the lease to said individuals, tenants of cotton industries, as aforesaid, said cotton industries has advanced to said tenants about $33,022.10, and has obligated itself to advance during the remainder of this crop year about $45,721.59, and it is entirely dependent on the crop to be raised on the land for reimbursement thereof. Said defendants are devoting their time, effort, and labor to cultivating said land for the purpose of raising a crop of cotton thereon to support themselves, those dependent upon them, and to produce the money necessary to repay the cotton industries the rental due Spears & Co., taxes on the land, and expenses of the district, and without the service of water the crop will be practically a total failure. Spears & Co. have heretofore issued bonds in the sum of $350,000, bearing interest, secured by deed of trust upon the land, which bonds are held by large numbers of people, and failure to pay the interest due semiannually on said bonds and to provide the sinking fund will result in the maturity of the debt and loss of the land to Spears & Co., and loss to the bondholders of the money they have invested. The water for irrigation is, in the main, taken from the Rio Grande river, and is furnished to the district under a contract with the United States government which operates the Elephant Butte dam and two irrigation systems in the Rio Grande Valley, to wit, the Elephant Butte irrigation district, operating in New Mexico, and the El Paso county water improvement district No. 1, operating in Texas.

For a long time a serious controversy has existed between Spears & Co., and the defendant district as to the amount which said company should pay to the district for water service. The controversy is due to the fact that, while Spears & Co. own approximately 7,000 acres of irrigable land within the district, as to 1,700 acres there was no service of water and no pretense of service, and as to 1,200 acres there was adequate water service, but no drainage, and without drainage such 1,200 acres could not be profitably cultivated, and as to the remaining 4,000 acres, while cotton could be grown thereon under normal conditions, if there were excessive rains, which sometimes occur, inadequate drainage would result, and in instances did result, in serious diminution of production. As a result of these conditions Spears & Co. at all times contend it should not be required to pay even the $6 per acre for said 1,700 acres not in cultivation because of the inadequacy of the drainage system, and it contended it should not be required to pay $9 per acre on the 1,200 acres upon which there was no adequate drainage, and contended it should not be required to pay the full rate upon said 4,000 acres, where, from time to time, production was diminished by reason of inadequate drainage. In the months of January and February of this year this controversy had reached a stage where Spears & Co. was refusing to pay all of the claim made against it by the district for the year 1930, amounting to approximately $58,400. The charges attempted to be asserted against said lands of Spears & Co. are unjust and discriminatory, and greater than those assessed against the balance of the land in the district. Numerous conferences took place between the representatives of the district and Spears & Co., the directors of the district, representatives of the cotton industries, and its tenants, which led to an agreement between the district, Spears & Co., and the cotton industries, as later set forth. During January, 1931, meetings were repeatedly held between the interested parties and their counsel at which it was repeatedly stated by the officers and directors of the district, and by Spinner, and other farmers within the district, that the payment of the taxes of a part of the people in the district, if not all of them, depended upon whether or not Spears & Co. would pay its taxes and it would be impossible to pay the interest due on the bonds of the district unless the taxes of Spears & Co. were paid, and further operation of the district would be impossible. The officers and directors of the district and the other persons in interest were notified it would be impossible for Spears & Co. to pay the full amount of taxes due by it unless provision was made for further drainage on its lands so that the same would be made productive, and that Spears & Co. would contest the amount charged against it in view of the fact that 1,700 acres of its land was not being served at all, and could not be served, because of no provision for drainage, and because a large part of the remaining portion of its land could not be made normally productive because of the insufficient drainage.

Spears & Co. made plain to all concerned that it had about $33,000 available, representing all of its portion of its last year's crop which would pay its taxes and charges if the same were reduced proportionately to the service it had in fact received from the district. Thereupon the cotton industries offered to advance an additional $25,000 if that amount would be used by the district in improving the drainage system on the Spears & Co. lands so that crops could be raised to reimburse it for its advances, and agreed to advance the necessary funds to the then prospective tenants of Spears & Co., the other plaintiffs herein, to enable them to cultivate the land. Spears & Co. was willing to accept

the offer of the cotton industries if the district would agree on that as a compromise and settlement of the taxes and other charges against Spears & Co. for 1930, but if the district was unwilling to so compromise in settlement Spears & Co. would be compelled to default in the payment of its taxes and other charges. After due consideration this offer of compromise was accepted by the district as set forth in the resolution adopted by the board of directors of the district, and plaintiffs were informed by defendants at that time that water would be delivered during the year 1931 on the plaintiffs' land and tax receipts issued to Spears & Co. in full payment of the 1930 charges. The aforesaid resolution of the board of directors of the district reads:

"Whereas, it would be to the best interest and advantage of the District to compromise and settle the issue that has arisen in reference to the 1930 taxes and water of Spears & Company's lands.

"Now Therefore, be it resolved that the District accept the proposition of the interested parties that:

"1. Provided all of the 1930 taxes and water on Spears & Company lands are paid in full on or before February 4th, 1931, in cash except the sum of $25,000.00 for which the Directors agree to accept notes of Spears & Company without interest due and payable as hereinafter stated.

"2. Provided further on or before February 4th, 1931, the El Paso Cotton Industries, Inc., executes and delivers to the District its written agreement to take at face value said notes of Spears & Company as the cash may be needed therefrom to pay for work done and materials furnished in connection with the drainage system herein next authorized.

"3. Immediately upon the performance of said promises the District authorized and instructs its engineer to perfect plans and to purchase for District to be used on drainage project herein contemplated a dragline machine, the first payment on which of at least 20% of the purchase price shall be advanced by El Paso Cotton Industries, Inc., under 4th sub-division hereof. Further, said engineer is ordered to enter upon the construction under his supervision and control of a drainage project on the Spears & Company lands at a cost of nine cents per cubic yard for all excavation work done by District dragline machine and all structures at cost but however, the total expenditure from funds of the District therefor shall not exceed $24,999.99 excluding the first payment on dragline machine to be purchased. Further, said drainage project shall be completed as expeditiously as possible.

"4. The second proviso hereof contemplates that the written agreement therein mentioned will contain proper stipulations assuring the District that when said first payment on dragline machine is needed and as materials are furnished and work done on the drainage project as heretofore set out, the El Paso Cotton Industries, Inc., will take up with cash bimonthly on demand and to amounts corresponding to the material furnished and work done on the drainage project, the Spears & Company notes and up to the total amount of $25,000.00."

It is alleged that agreements were entered into between Spears & Co. and the cotton industries carrying out the terms of the agreement and contracts made between the cotton industries and the individual plaintiffs providing for advancements by the cotton industries. But for said contract of compromise Spears & Co. would not have paid said sum of $33,000 to the district, nor the additional sum of $3,000 by the cotton industries, and the cotton industries would not have been willing to advance money to other farmers within the district, which contracts were made by the cotton industries with other farmers in the district, and, if the compromise be not carried out, losses amounting to approximately $1,000,000 will be sustained by the cotton industries. The district has no means out of which judgment for the losses could be satisfied, and cotton industries will sustain irreparable injury. The $33,000 was paid to the district and used to pay interest on its bonds and other obligations due by the district. A preliminary payment of $3,000 was made by cotton industries to meet the first expense of putting in more effective drainage on the Spears & Co. lands.

The district, its officers and directors, have refused to furnish water for the year 1931 for the lands of Spears & Co., and avow their purpose to continue to refuse water to said lands, though said district has sufficient water for such purpose and is furnishing water to the other farmers in the district; that there will be another crop failure on the lands if such water be not furnished.

The petition sets forth a repudiation of the contract of compromise as evidenced by a resolution of the board of directors of the district, and that the district has not offered to return what it has received under the compromise contract. The resolution last referred to reads:

"Be it resolved by the Hudspeth County Conservation & Reclamation District No. 1, that:

"Whereas: Contrary to its understanding of the statements made to it by the Superintendent of the Reclamation Fund and the Manager of the El Paso Water Improvement District No. 1 that it would be allowed to run a year in arrears without denial of water, it was notified on February 18th, 1931, that

water service for 1931 would be withheld until 1930 water bill has been paid in full, or measures taken to restore and pay all amounts contemplated for diversion to other uses, with assurances of regularity of collection as to assessments and payment of the balance then remaining due on bill; and,

"Whereas: To that end it is demanded that the District furnish the Superintendent of Reclamation fund with a statement of all those tax payors that have paid for water, and a copy of its delinquent tax roll, and given definite assurances as to the method and manner to be pursued in the collection of assessments:

"Now therefore: It is ordered that the tax receipts heretofore issued on the Spears & Company lands be, and the same are hereby, cancelled insofar as they receipt for the credit of $25,000.00 which was to be made on said tax and water charges for drainage purposes, and that said drainage program as contained in resolution providing therefor and heretofore passed by the District, be, and the same is hereby nullified.

"Further be it resolved that the tax assessor and collector of the District immediately submit a copy of the delinquent tax roll to the Superintendent of the Reclamation Fund and that said delinquent tax roll include the Spears & Company lands to the amount of $25,000.00.

"Be it further resolved that in accordance with requirements of the Superintendent of the Reclamation Fund, water be refused by the District until all maintenance and operation and water charges and one-third of the interest and sinking fund has been paid in cash to the District and said water charges paid over in full in cash to the Superintendent of the Reclamation Fund.

"Be it further resolved that the attorney of the District, in co-operation with attorneys representing the Reclamation Department, if they see fit to intervene, proceed, as soon as the law allows, to file suit against all delinquents including Spears & Company lands, to collect any unpaid water charges and taxes."

Upon ex parte application a temporary injunction was issued substantially as follows:

1. The district, its officers and directors above named, were enjoined to refrain from stopping, or in any way interfering with, the use of water necessary for the lands of Spears & Co., except upon the same terms and conditions applied to other persons within the district and obtaining water for irrigation purposes therefrom during the crop year of 1931.

2. Said district, its officers and directors above named, were enjoined and restrained from interfering with the use of the ditches and appurtenances belonging to said district or to Spears & Co. necessary and convenient to the carrying of water over all the irrigable lands of Spears & Co. within the district.

3. The district, its officers and directors above named, were enjoined from longer detaining the checks and other appliances necessary or useful in the distribution of water upon the lands of said Spears & Co.

4. The district, its officers and directors above named, were enjoined from further refraining from, or delaying in the work of, preparing the lands of Spears & Co. for drainage as provided for in that certain contract entered into between the district and the officers and directors of said district on February 2, 1931, as shown by a copy of the resolution of the board of directors of said district adopted February 2, 1931, a copy of which was attached to the injunctive order and made a part thereof.

5. The district, its officers and directors above named, were enjoined and restrained from refraining, during the remainder of the crop growing season of 1931, withholding water necessary to raise the crops upon the lands of Spears & Co. during the crop year of 1931, at the same price and upon the same conditions under which water is supplied to other persons in the district.

6. The district, its officers and directors above named, were enjoined to refrain from the use of any ditches upon the lands of Spears & Co. for any purpose whatsoever until and during such time as they are supplying water through said ditches to Spears & Co. at the same price and upon the same conditions they are supplying to all other persons in the district.

7. The district, its officers and directors, are enjoined and restrained from in any way failing to, or refraining from, or delaying in carrying out the agreement between Spears & Co., cotton industries, and the district on February 2, 1931, as set forth in the resolution of the district of that date, a copy of which was attached to the injunctive order marked Exhibit B, during the crop year of 1931, and they are enjoined and required to supply to the plaintiffs water at the same rates at all reasonable and proper times and proper amounts as is served to all other persons in the district.

The injunction was to issue upon the filing of a bond in the sum of $20,000. The bond was filed and approved and the temporary injunction issued.

The answer and motion of the defendants is quite lengthy, and we shall quote here only those portions which we consider material to a proper disposition of this appeal.

The answer, aside from general and special exceptions and a general denial, contained the following:

"11. Further answering herein, without waiving said exceptions and the effect of said general denial, these defendants say that they are the officers and Directors of the Hudspeth County Conservation and Reclamation District No. 1 and that as to all matters alleged by plaintiffs in their original petition, they were acting as such, as plaintiffs well knew, and plaintiffs dealt at all times alleged with them as such, and that the Hudspeth County Conservation and Reclamation District No. 1 was vested with all the powers given it under the law and these defendants deny that they at any time acted in their individual capacities, and deny that it was their duty under the law to furnish water for the 1931 season and to furnish ditches and drainage to the lands of Spears & Company; and, further deny that they had discriminated in any way as to providing inadequate drainage of the Spears & Company lands.

"12. These defendants further deny that they have any knowledge of any serious controversy that has existed between the District and Spears & Company over a long period of time and say, on the contrary, that all taxes and assessments have heretofore been paid in full in cash on the Spears & Company lands up until the taxes and assessments for the year 1930, and during the month of January, 1931, after said taxes were due and payable and before same became delinquent the defendants notified their attorney that it appeared to them from information they had received, that there was a serious possibility that Spears & Company land taxes would not be paid and that the proceeds from the cotton raised on the Spears & Company lands during the year 1930 would be diverted to the payment of other debts of Spears & Company, and directed said attorney to proceed to collect said taxes out of said crop, and in accordance therewith the said attorney, O. R. Armstrong, addressed and mailed a letter to Mr. Frank M. Murchison in which it was stated that the District was addressing him as Trustee for the J. B. Spears part of the crop, and that the District was informed that he was holding the cotton receipts of the J. B. Spears part of the crop, and that the District had a lien, prior and superior to all other liens, to secure the payment of the taxes for the year 1930; and, also, addressed and mailed a letter to J. B. Spears & Company, suggesting that he instruct Mr. Murchison to turn over said cotton receipts to Defendant. The said attorney of the District received a reply from Mr. William H. Burges stating that the First National Bank was the Trustee and that he was not sufficiently advised as to any claim the District might have on the cotton to be able to say whether he would turn same over to the District or not. From this it developed that the Spears & Company lands were indebted to Hudspeth County Conservation & Reclamation District No. 1 in the amounts shown by the tax receipts alleged by plaintiffs, as taxes for the year 1930, and negotiations of settlement thereon proceeded from day to day and numerous conferences were held by the plaintiffs and the defendants and their representatives and attorneys, and defendants told plaintiffs that defendants were willing to do anything that they could legally do, and suggested that the attorney of Spears & Company prepare a resolution setting forth definitely what it desired to be done, and such resolution was submitted to defendants' attorney and he advised plaintiffs' attorney that he did not believe such a resolution could be legally passed, but defendant Directors accepted the opinion of attorney William H. Burges, and after said resolution was modified and re-drafted into the form set out in Exhibit A of plaintiffs' petition, same was duly passed by the defendant Directors, acting as such; and in pursuance thereof the plaintiff Spears & Company made, executed and delivered to defendant Hudspeth County Conservation & Reclamation District No. 1, the $25,000.00 in notes therein called for, and paid over the difference in cash in the amount of taxes to the Hudspeth County Conservation & Reclamation District No. 1 directing that the whole amount of the interest and sinking fund assessment as to the Spears & Company lands should be paid out of said cash payment, and directing that the electric bill for operating the drainage pumps should also be paid out of said cash, which was done by the defendant District. * * *"

Appellants then allege the cutting off of the water by the reclamation department and the receipt of notice from that department that water would not be furnished unless the 1930 bill was paid in full or steps taken to restore all sums contemplated for diversion to other uses; and that they had been informed by certain landholders in the district of their intention to enjoin the expending of the money on the Spears & Co. land.

Then follows this allegation: "After numerous conferences with said land owners and the Reclamation Department, it appeared that it was to the best interest of the District to rescind said Resolution and same was accordingly rescinded, being Resolution set out in Exhibit C, which was passed to meet the requirements of the Reclamation Department and obtain water for those tax payors in the District that had paid all their 1930 taxes in cash and were willing to sign an application for water, in accordance with law, for the year 1931."

Appellants then tendered the notes and the dragline machine purchased with the proceeds of the $3,000 note.

In approaching a discussion of the trial court's action in this case, we should bear in mind the contentions of the parties and also that rule of law which prevents an appellate court from interfering with the exercise of discretion by the trial court, where a reasonable showing has been made in support of an application for injunction. 14 R. C. L. pp. 313, 314; Parrot Silver, etc., Co. v. Heinze, 25 Mont. 139, 64 P. 326; 53 L. R. A. 491, 87 Am. St. Rep. 386.

Appellees here allege the execution of a compromise agreement, and prayed that the terms thereof be carried out, alleging that they had no adequate remedy at law, and that they would suffer irreparable injury if appellants were not made to perform.

Appellants, on the other hand, in a very evasive and indefinite manner admit the execution of such agreement and attempt to excuse their failure to perform by an allegation that they had been forced to do so in order to meet the requirements of the reclamation department and to avoid some threatened injunction suits by other landowners in the district.

Appellants in their brief assert that the suit is set down for hearing in September, and that to permit the injunction to remain in force would have the effect of giving appellees everything they are asking for in the suit and forclose all issues against appellants before they have had an opportunity to present certain defenses which are enumerated in the brief.

This contention might be sound were it not for the fact that none of the reasons argued in the brief are incorporated in the answer filed here.

The trial court had before him an application to force appellants to carry out the terms of a certain agreement, which appellants admit was executed and for the failure to carry out which they offer no legal excuse. Confronted with such a situation, how can it be said that he abused his discretion, when it was shown that thousands of dollars had been spent upon the faith of such agreement, and that it would all be lost if the relief was not granted.

We have studied the record carefully and fail to find such an abuse of discretion, under the record as made as would justify a reversal.

Appellants also contend that the injunction should have been dissolved, because there was no statement made as provided in article 7751, R. S., 1925.

While it is true that no statement was made, yet it appears from the petition that appellants at the time of the compromise agreement agreed to furnish appellees water during the year 1931. Under the holding in Cameron County Water Imp. Dist. No. 1 v. Daniels (Tex. Civ. App.) 269 S. W. 1066, an application is not required where the officers of the District expressly assume the obligation of furnishing water.

We have given full consideration to the several propositions advanced by appellants and find them without merit under the facts here.

Being of the opinion that there was no abuse of discretion by the trial court which would justify a reversal by this court, the judgment of the trial court is affirmed.