## JOHN J. CAMBERS, Appellant, *v.* WILLIAM LOWRY ET AL., Respondents.

[Submitted Oct. 4, 1898. Decided Oct. 10, 1898.]

*Contracts—Interpretation of Technical Words—Mining Lease —Injunction.*

1. Under Section 2210 of the Civil Code, which provides that technical words in a contract are to be interpreted as usually understood by persons in the profession or business to which they relate, witnesses who are qualified may testify as to the meaning of the following words in a mining lease, "there shall be no ores stoped, except at the 300 foot level, and all ores shall be extracted from the drifts, raises or winzes." The decision of the lower court granting or refusing a preliminary injunction is a matter of discretion, and the order of the court below will not be reversed when the right to the injunction depends upon technical terms in a contract concerning the meaning of which the evidence is conflicting.

*Appeal from District Court, Silver Bow County.*

Bill by John J. Cambers against William Lowry and others. From an order denying a temporary injunction, plaintiff appeals. Affirmed.

Statement of the case by the justice delivering the opinion.

Plaintiff, Cambers, sued defendant Lowry and others for damages for the breach of the conditions of a certain mining lease, and for an injunction enjoining defendants from working and mining the premises involved pending the suit. Upon hearing on an order to show cause, the district court refused to issue the injunction prayed for, and dissolved the temporary restraining order theretofore issued. The plaintiff appeals from the order refusing to grant an injunction pending the action, and dissolving said temporary restraining order.

The lease and agreement between the parties in interest contains certain agreements on the part of the defendants in relation to cross-cuts in the mine, timbering and lagging of the drifts and cross-cuts, raises, winzes, and stopes. It also contains the following clause: "It is hereby expressly agreed

that there shall be no ores stoped, except at the three hundred foot level, and all ores extracted shall be extracted from the drifts, raises, or winzes.''

Among other allegations in the complaint, it is alleged that in extracting ores from the drifts, winzes, stopes, and other workings, the defendants have gone outside the same, contrary to the covenants of the lease, and have failed to timber or lag said outside portions; that the winze sunk by the defendants from the two hundred foot level is over ten feet wide, etc., and that defendants are stoping valuable ores from said mine at a point between the two hundred and three hundred foot levels, at points near said two hundred foot level, and between the drift about forty-six feet below the two hundred foot level, said stoping all being between said drift and said two hundred foot level, there having been and being no stoping whatever below said drift, and no stoping having been done at said three hundred foot level, and that defendants have extracted ores from the mine, other than from said drifts, raises and winzes, in violation of the covenants of the lease; that defendants, in violation of the covenants requiring all ores to be extracted from the drifts, raises, and winzes, are extracting ores outside and beyond said drifts. raises, and winzes, to the injury of the value of the mine; that defendants intend to extract all of the ores between said two hundred and three hundred foot levels, and other parts of the mine outside of the workings within which they should have been confined; and that defendants, in violation of the terms of the lease, ran a winze from the two hundred foot level to a depth of fifty or sixty feet, and at the bottom of the winze made a level, and stoped ore from the back of the level.

*L. J. Hamilton, Francis Brooks*, and *B. S. Shuster*, for Appellant.

*Clayberg, Corbett & Gunn, J. B. Welcome*, and *H. Lowndes Maury*, for Respondents.

HUNT, J.   If the terms of the lease confined the defendants in the extraction of ore, literally to the three hundred foot

level, plaintiff was entitled to the injunction order prayed for; but if it was the intent of the parties to the lease that defendants could stope above the three hundred foot level, and below the two hundred, the district court properly denied the injunction. We so state the proposition involved, because the real contention between the parties confessedly arises over that clause in the lease which forbids stoping "except at the three hundred foot level," and which requires all ores to be extracted "from the drifts, raises, and winzes," and because it appeared in the evidence heard that the stoping done by defendants was confined to the bottom of the winze, some fifty feet below the two hundred foot level.

The lease contains numerous mining terms,—for instance, "lagging," "stopes," "raises," "winzes," "drifts," "levels," and others,—the significations of which, as used between mining men, are peculiar, and are so understood between them in their mutual agreements concerning mining properties, but which are not wholly clear to those unfamiliar with their meaning with relation to the particular subject-matter of mines. The learned judge who heard the testimony in the court below evidently believed that the case was one where evidence was properly admissible to interpret the technical terms used according to the usual understanding of miners and others engaged in the business of mining, and under Sections 2209 and 2210 of the Civil Code, and by the authority of this court in *Newell* v. *Nicholson*, 17 Mont. 389, permitted qualified witnesses to testify in explanation of the words used in that clause of the lease over which the controversy arose. We affirm the ruling admitting such testimony as sanctioned not only by our own court in the case cited, but by the very high authority of Lord Chief Justice Denman in *Clayton* v. *Gregson*, 5 Adol. & E. 302, where evidence was allowed to show the understanding among coal miners of the term "level" as used in a lease of a coal mine. Just what was meant, therefore, by the expression "stoping at the three hundred foot level," and what was the "three hundred foot level" of the mine, and to what level ore between the two

hundred and three hundred foot levels belonged, in the usage and custom of working mines, and whether or not ore taken by stoping from the bottom of a winze sunk from the two hundred foot level was ''three hundred foot ore'' or not, were questions to be correctly answered after hearing parol evidence of the sense in which they are usually received when used by persons when engaged in mining.

From the record before us it appeared in evidence that ''everything above the three hundred and below the two hundred level'' is called the ''three hundred foot level;'' that, ''if a man wanted to go to the three hundred foot level of a mine, * * * he would stay right on the level,'' but, if told to ''stope at the three hundred foot level'' he would be expected to go ''to any point between the two hundred and three hundred [levels],—it might be five feet below two hundred, and the ore would be carried to the three hundred foot level;'' and that ore between the two hundred and three hundred levels, although ''all tributary to the three hundred foot level, * * * is not always taken out at the three hundred foot level.'' From evidence of this character, the court, to give practical effect to the lease, rather than an effect which would confine defendants, in the extraction of ore, to the three hundred foot level alone, by which interpretation defendants would substantially be denied the right to extract any ore from the mine, concluded that the intent of the language used was that the lessee ''be restricted to the stoping of ores above the three hundred foot level and below the two hundred.'' ''It matters not,'' added the judge in his memorandum opinion, ''that they commenced to work and extract ores between the two levels referred to. If they had started at the three hundred, and stoped up to the point where they were working when temporarily restrained, there would have been no controversy, and there is now no just cause for complaint.''

There were conflicts in the evidence as to the meaning of the terms of the lease above discussed; plaintiff's witnesses testifying that, under the provision of this lease above re-

ferred to, stoping would begin at the "back" of the three hundred foot level, and that ore would be taken down to and through the three hundred foot level of the mine; and there were conflicts likewise as to timbering of the mine, but they, like the others, were resolved in defendants' favor.

Under the firmly established rule of this court, following recognized principles of law, the granting or refusing to grant preliminary injunctions is so largely a matter of discretion in the district courts that the supreme court will be very slow to interfere with the exercise of that discretion. We find nothing in this case to warrant a departure from that rule, and the order of the district court cannot be disturbed.

*Affirmed.*

PEMBERTON, C. J., and PIGOTT, J., concur.