ANACONDA COPPER MIN. CO., RESPONDENT, v. PILOT-
BUTTE MIN. CO., APPELLANT.

(No. 3,712.)

(Submitted November 13, 1915.   Decided December 22, 1915.)

[153 Pac. 1006.]

*Mines and Mining—Injunction—Discretion—Equity—Appeal
—Evidence—Error—Effect.*

Mines and Mining—Reciprocal Injunction *Pendente Lite*—Right to Com-
plain.
1.   Where, in an action to quiet title to ore bodies, both parties asked
for an injunction *pendente lite* and the court granted one in effect
restraining both from conducting mining operations in the ground in
dispute until the rights of the parties could be finally determined, the
appellant had no just cause for complaint.

[As to right to grant temporary injunction before institution of ac-
tion, see note in Ann. Cas. 1913E, 462.]

Same—Injunction—Conflict in Evidence—Discretion.
2.   Where, in the class of cases referred to in the above paragraph,
there is a substantial conflict in the evidence, the exercise of the dis-
cretionary power lodged in the district court to grant or refuse to grant
an injunction will not be disturbed, except in case of manifest abuse.

Same—Evidence—Erroneous Admission—How Viewed on Appeal.
3.   There being sufficient competent evidence in the record to sustain
his decision, and it not appearing that it was in part based upon evi-
dence claimed to have been erroneously admitted, it will be presumed
on appeal that in arriving at his conclusion to grant an injunction
*pendente lite,* the trial judge excluded from consideration all such evi-
dence.

*Appeal from District Court, Silver Bow County; Jeremiah
J. Lynch, Judge.*

ACTION by the Anaconda Copper Mining Company against
the Pilot-Butte Mining Company.   From an order granting to
plaintiff an injunction *pendente lite,* the defendant appeals.
Affirmed.

*Mr. John J. McHatton,* for Appellant, submitted a brief, and
one in reply to that of Respondent, and argued the cause orally.

The court erred in overruling the defendant's objections to
the various matters contained in the land office records of the
Emily and the Badger State claim, because not verified as re-

quired by law or at all; furthermore, they are not shown to
have been recorded and no testimony was offered to show the
location of the claim, that is, the discovery of mineral, the
marking of the corners, the identification of the claim or any
of the matters required by the statutes of the state of Mon-
tana or the laws of the United States to be done in order to
make the location, and this shows the entire inadmissibility of
the alleged notices. The alleged location notices are void.
(*Hickey* v. *Anaconda Copper Min. Co.*, 33 Mont. 46, 81 Pac.
806; *Washoe Copper Min. Co.* v. *Junila*, 43 Mont. 178, 115 Pac.
917.) It being evident that they could not be admitted in evidence,
then all the other matters objected to appeared to be entirely
irrelevant and immaterial, and inadmissible. It is necessary
that the facts constituting the location should have been estab-
lished, and without the establishing of these facts the admis-
sion of even a proper notice of location would be an error.
When no valid location is established, the patent cannot relate
back beyond the application for patent. (*Hickey* v. *Anaconda
Copper Min. Co.*, 33 Mont. 46, 81 Pac. 806; *Butte Consol. Min. Co.*
v. *Barker*, 35 Mont. 327, 335, 89 Pac. 302, 90 Pac. 77; *Helena
etc. Iron Co.* v. *Baggaley*, 34 Mont. 464, 87 Pac. 455; *Ferris* v.
*McNally*, 45 Mont. 20, 121 Pac. 889.)

So far as our right to injunction beneath the surface of the
Pilot lode claim is concerned, and under the testimony, there
can be no possible question. The fact that the plaintiff ob-
tained an injunction against the defendant of itself and in the
situation of the vein beneath the surface of the Pilot lode claim
entitles the appellant to an injunction. The presumption is
that the vein and ore body beneath the surface pelongs to the
Pilot lode claim. (*Maloney* v. *King*, 30 Mont. 414, 76 Pac. 939,
25 Mont. 188, 64 Pac. 351; *Anaconda Copper Min. Co.* v. *Heinze*,
27 Mont. 161, 69 Pac. 909; *Parrot S. & C. Co.* v. *Heinze*, 25
Mont. 139, 87 Am. St. Rep. 386, 53 L. R. A. 491, 64 Pac. 326;
*State ex rel. A. C. M. Co.* v. *District Court*, 25 Mont. 504, 520, 65
Pac. 1020.) Besides this, there is the testimony which established
the appellant's right to this vein not only beneath the Pilot

surface, but to the extent asserted in the answer and proof in the case. Taking the testimony and applying the rules of law thereto, we find that not only were the facts established, but that under the law there is a presumption in our favor.

The vein is presumed to continue on the strike and dip which it is shown by the testimony it has in the Pilot workings. (2 Lindley on Mines (3d ed.), 615; *Armstrong* v. *Lower,* 6 Colo. 393; *Wakeman* v. *Norton,* 24 Colo. 192, 49 Pac. 283; *San Miguel Consol G. Min. Co.* v. *Bonner,* 33 Colo. 207, 79 Pac. 1025; *Stewart M. Co.* v. *Ontario M. Co.,* 23 Idaho, 724, 132 Pac. 787, 793.) We call attention to the language of Judge Hallott in *Leadville Min. Co.* v. *Fitzgerald,* 4 Morr. Min. Rep. 380, Fed. Cas. No. 8158, and to that of Judge Hawley in *Consolidated Wyoming G. Min. Co.* v. *Champion Min. Co.,* 63 Fed. 540. Whenever one enters beneath the surface of another and carries on mining, he may enjoin until his right to enter has been determined. (3 Lindley on Mines, secs. 866, 872.)

"The mere existence of a doubt as to the title does not of itself constitute a sufficient ground for refusing an injunction. Always, in questions of injunction against the working of mines, the doubt should be resolved in favor of granting the injunction. A denial of the preventive remedy by injunction where the injuries complained of are of a character calculated to destroy the value of the land for all useful purposes would be tantamount to a denial of all protection." (*Boyd* v. *Desrozier,* 20 Mont. 444, 449, 52 Pac. 53; *Gilpin* v. *Sierra Nevada Con. Min. Co.,* 2 Idaho, 662, 696, 23 Pac. 547, 552, 1014; *Safford* v. *Flemming,* 13 Idaho, 271, 89 Pac. 827; Snyder on Mines, sec. 1628; Lindley on Mines, sec. 872.)

*Messrs. L. O. Evans, W. B. Rodgers, D. Gay Stivers* and *D. M. Kelly,* for Respondent, submitted a brief; *Mr. Evans* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The plaintiff corporation is the owner of the Badger State and Emily lode claims, both patented, situated in Silver Bow

county. The Badger State is the senior location. Applications for patents for these claims, respectively, were made on January 19, and April 21, 1882, and patents were issued on March 15, 1883, and June 10, 1884. The defendant owns the Pilot claim to the north. The location of this claim was in point of time later than either of the others, but patent was applied for on July 15, 1881, and was issued at a date prior to that of the Badger State or the Emily. As originally located, the lines of all the claims were so laid that the owners are *prima facie* entitled to extralateral rights. Subjoined Diagram 1 in a general way represents the boundaries of the several claims as they were originally located and as they were finally patented. The dotted lines indicate the boundary lines as originally laid, and the heavy lines the boundaries described in the patents. The Emily veins referred to by some of the witnesses as the north and south veins, enter the claim from the northwest as indicated, and pass into the Badger State approximately at the points B. and A. There is some controversy as to whether these are distinct apices or mark the north and south boundaries of a single broad vein. For the purposes of this appeal it is not important how they are regarded. It is not controverted that they dip to the north and unite in their descent into the earth near the 900-foot level of the Emily, and thereafter constitute a single vein dipping to the north at an angle of about 80 degrees. Below the point of union the vein is in this record referred to as the Badger or Emily vein. The united vein has been developed through the Badger shaft by extensive workings along its strike from a point which is roughly designated by the letter H, north of the south line of the Pilot to a point near the eastern boundary of the Emily. At the point indicated by the letter I, the vein passes on its dip into the Pilot, and from that point toward the northwest the plaintiff's workings are within the planes of the south boundary of the Pilot. The irregular line S S' represents a branch of the Pilot vein referred to in this controversy as the Pilot Shaft Vein. Whether it is the discovery vein or a branch

is not important.   The irregular line market T T' represents
a vein in the lower levels of the Pilot which is referred to as
the Pilot South Vein.   It is not definitely disclosed by actual

DIAGRAM 1

development whether this has an apex in the Pilot ground dis-
tinct from that of the Shaft Vein, but there is evidence tend-
ing to show that it has.

Diagrams 2 and 3, which are cross-sections of the claims looking from the east, the plane of which is represented substantially by the line P P′ on Diagram 1, will serve to illus-

trate the contentions of the parties as to the conditions found on the 1800-foot level of the Emily and below.  Plaintiff's contention, illustrated by Diagram 2, is that defendant's South Vein has not been sufficiently developed to determine its apex, but so far as it can be traced from the 1800-foot level to the 500-foot level of the Pilot shaft, it dips slightly to the north, is substantially parallel with the Emily Vein and the Pilot Shaft Vein and does not anywhere come in contact or unite with the former.  From this point of view, the plaintiff is entitled to follow the Emily vein extralaterally into the Pilot.

The defendant claims that its South Vein dips to the south at an angle of about 80 degrees, and forms a junction with the Emily Vein on or near the 1800-foot level of the Emily workings.  Diagram 3 represents its contention.  Though this suggests that as the vein approaches the surface it unites with the Shaft Vein on its strike toward the northwest from a point near the 500-foot level in the Pilot Shaft, this condition, if found to exist, would not affect the merits of defendant's claim; for whether the vein has a separate apex or not, if defendant's theory as to the priority of right between plaintiff's claims and the Pilot as stated below is correct, it is entitled to the Emily Vein at and below its point of union with the South Vein.

The plaintiff brought the action to quiet title to the ore bodies found on the 1800-foot level and below, claiming them by virtue of its extralateral rights under the Badger State and Emily patents.  It charges that the defendant asserts some right or title to the vein, both within the boundaries of the Emily claim and upon the extralateral portions thereof beneath the Pilot, has extracted from it large quantities of valuable ore which it has converted to its own use, and, at the time the action was brought, was engaged in committing like trespasses.  In its answer the defendant by way of counterclaim asserts title to the vein and ore bodies in question, and asks that its title be quieted as against the claim of plaintiff.  Its claim proceeds upon the theory that the original locations of

the Badger State and Emily claims, though older than that of the Pilot, were void because the recorded notices thereof were not verified as required by the statute then in force in Montana; that plaintiff's title cannot therefore relate to a date earlier than the applications for the Badger State and Emily patents, and that since the patent to the Pilot claim was applied for and issued at a date earlier than the dates at which the applications were made for patents to the former, defendant has the exclusive title to the entire vein below the 1800-foot level by virtue of the junction of its South Vein with the Emily Vein, whether the junction takes place within the Pilot claim or south of the north boundary of the Emily.

When the action was commenced, both parties applied for [1] an injunction *pendente lite.* After a hearing upon oral evidence and affidavits the court enjoined the defendant from conducting any mining operations upon the Emily Vein within the territory bounded by perpendicular planes passing through the line E D and the line G K extended indefinitely, until the final determination of the action. The order also contains the following: "Furthermore, the plaintiff is hereby required to maintain *pendente lite* the present status as to the said Emily Vein below the 1800-foot level of the said Badger quartz lode claim, wherever the same may be found on its dip within the surface lines of the Pilot lode claim extended vertically downward, which said Pilot lode claim is more fully described in the answer of defendant. Except as hereinbefore otherwise provided, the application of the defendant for a temporary injunction is refused." From this order the defendant has taken two appeals, the first from that portion of it granting the plaintiff an injunction, and the second, the one we are now considering, from that portion of it quoted above. The former is now pending on rehearing. It involves the question whether the defendant is entitled to the portion of the vein found within the angle formed by the lines B F and B C, by virtue of its common-law rights.

We are unable to perceive why counsel has taken two appeals; for all the questions determined by the trial court could as well have been presented by one appeal and upon one record. The course pursued is, to say the least, anomalous and of doubtful right. It can be justified only upon the theory that the order is made up of two distinct orders from each of which an appeal lies under section 7098 of the Revised Codes. The writer is of the opinion that the course pursued by counsel is not authorized by the statute (section 7100); for though the order is a compound of two orders, it is but a single order designed to dispose of the whole preliminary controversy, and as such is reviewable upon one appeal only. But passing this matter, because it is not referred to by counsel for the plaintiff, we find that the appeal is without merit for two reasons.

While the order does not specifically so declare, it in legal effect grants a reciprocal injunction restraining both parties from conducting mining operations upon the Emily Vein within the Pilot claim below the 1800-foot level. The portion of the order quoted, perhaps, does not express the court's purpose in the most appropriate terms. It nevertheless enjoins upon the plaintiff the duty to preserve the Emily Vein in its present condition until the rights of the parties may be finally determined. So far, therefore, as it relates to the vein wherever found within the Pilot claim, the plaintiff is effectively restrained from conducting any mining operations upon it. Hence the defendant has no cause to complain of it. If the plaintiff should disregard it and proceed to mine upon and extract ore from the vein at any point within the plane of the south boundary of the Pilot ground, the court would, upon proper showing, subject it to punishment for contempt and thus preserve the vein until it can be determined who is the owner of it.

In the second place, the defendant's right to enter the Emily ground at any point depends primarily upon the questions of fact whether its South Vein unites on its dip with the Emily Vein, and whether the plaintiff is mining and removing ore from it at any point on its strike, to the east of the point I at or be-

low the supposed point of union on the 1800-foot level. The evidence is very voluminous, consisting of more than 700 printed pages. It would be a bootless task to undertake to epitomize even the material parts of it within any reasonable compass. So far as it relates to the first question, it is in hopeless conflict. The plaintiff's evidence controverts even the existence of a vein south of the Pilot Shaft Vein which has its apex in the Pilot ground. But conceding, for the sake of argument, that the defendant has satisfactorily established the existence of its South Vein it has been so slightly developed that its strike and dip cannot be definitely ascertained by actual observation. That this is so is demonstrated by the conflicting statements of the witnesses as to what may be observed in the excavations made in the Pilot, and by the diversity in the opinions of experienced miners who have been in the employ of the parties, and of engineers and geologists who made personal examination of all the workings in both claims within the area in controversy for the purpose of enabling them to testify at the hearing. No less sharp is the conflict as to the union of the two veins at the 1800-foot level or any other point below. The court resolved the conflict in favor of the plaintiff, as is made manifest by the portion of the order enjoining defendant; and since, in our opinion, the evidence does not preponderate against the finding, we do not feel at liberty to disturb it.

To the east of the Point I the Emily Vein is exposed in the workings of the plaintiff by one drift on the 1800-foot level, and another on the 2,000-foot level, the two being connected by raises. So far as the evidence discloses, no ore has been or is being extracted from this part of it. The defendant has not developed its South vein in this direction at all. If there is no union of the veins within the Pilot ground to the northwest of Point I, the existence of such a union to the southeast of that point is a matter of speculative opinion rather than the [2] subject of proof by substantial evidence. But however this may be, the rule has been uniformly observed by this court in this class of cases, that where there is a substantial conflict in the

evidence, the discretionary power lodged in the district court to grant or refuse to grant an injunction will not be disturbed once it has been exercised, except in case of manifest abuse. (*Chambers* v. *Lowry,* 21 Mont. 478, 54 Pac. 816; *Parrot S. & C. Co.* v. *Heinze,* 24 Mont. 485, 62 Pac. 818; *Parrot S. & C. Co.* v. *Heinze,* 25 Mont. 139, 87 Am. St. Rep. 386, 53 L. R. A. 491, 64 Pac. 326; *Montana Ore Pur. Co.* v. *Boston etc. Co.,* 25 Mont. 427, 65 Pac. 420.)

In *Parrot S. & C. Co.* v. *Heinze, supra,* the district court had granted an injunction upon conflicting evidence. Upon appeal this court said: "Upon the evidence submitted, the district court might have found in favor of defendants' contention; as it did not, however, and as there is substantial evidence tending directly to support plaintiff's contention, we do not feel justified in holding that the showing made by plaintiff was not reasonable, or that the court abused its discretion in finding as it did. The rule heretofore applied by this court in this class of cases is that the granting of a preliminary injunction is so largely a matter of discretion, that it will be sustained, upon appeal, where there has been a reasonable showing made in support of the application in the court below." We find no abuse of discretion in this case.

Counsel for the defendant argues in his behalf that the original notices of location of the Badger State and Emily claims were void, as a matter of law, because they were not properly verified, and that inasmuch as this is so, the defendant is entitled to an injunction as of course. This contention assumes as established, both the existence of the South Vein with the strike and dip claimed for it, and its union with the Emily Vein at or near the 1800-foot level. As we have already pointed out, the court necessarily found that the veins do not unite; hence it is wholly immaterial on this appeal at what dates the respective patents were issued. If the veins do not unite, the defendant's position is wholly untenable, and its operations upon the Emily Vein are trespasses upon the plaintiff's rights. Whatever may be the ultimate result of a trial

upon the merits, we shall not undertake to determine on this appeal the priority of title and the resulting rights as between the plaintiff and the defendant.

° Counsel for plaintiff offered, and the court admitted in evidence, exemplified copies of records of the United States land office upon applications for patents for the plaintiff's claims. These records contained copies of the location notices and other documents. Counsel for the defendant objected to the admission of some of them, and particularly to copies of the notices on the ground that they were immaterial. His objection was overruled. He insists that the order should be reversed because of this ruling. In answer to this contention it is sufficient to say that upon the assumption that counsel's objection was well [3] made, this court will presume that when the trial judge came to make up his conclusion, he excluded from consideration all the immaterial and incompetent evidence. (*Montana Ore Pur. Co.* v. *Boston etc. Co., supra; Finlen* v. *Heinze,* 28 Mont. 548, 73 Pac. 123; *Moss* v. *Goodhart,* 47 Mont. 257, 131 Pac. 1071.) This is the rule observed in equity cases, when there is sufficient competent evidence to sustain the trial court's findings, and it does not appear that the decision was based in part upon the objectionable evidence.

Several other questions are presented and argued, but we do not think them of sufficient merit to require special notice. The order is affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.