HON. JOHN B. CLAYBERG,
HON. LEW. L. CALLAWAY,
HON. W. H. POORMAN.

HEINZE ET AL., APPELLANTS, v. BOSTON & MONTANA CONSOLIDATED COPPER & SILVER MINING CO., RESPONDENT.

(No. 2,022.)

(Submitted May 23, 1904. Decided June 13, 1904.)

*Mines—Owner of Surface—Presumption of Ownership of Ores Beneath the Surface—Evidence to Overcome—Sufficiency— Preliminary Injunction—Discretion of Court.*

1.  The presumption that an owner of the surface is also the owner of ores found beneath the surface is not overcome by the opinion of an engineer that, if a vein having its apex in ground owned by another continues to dip at the same angle as it dips where it is exposed in upper levels, it will reach the point where the owner of the surface is conducting operations.
2.  The granting of an injunction *pendente lite* is within the discretion of the trial court, and, in the absence of a clear abuse of it, the supreme court will not interfere.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

SUIT by F. Augustus Heinze and another against the Boston & Montana Consolidated Copper & Silver Mining Company. From an order denying an application to modify an order directed by the supreme court to be made, plaintiffs appeal. Affirmed.

*Mr. John J. McHatton,* and *Mr. James M. Denny,* for Appellants.

*Mr. A. J. Shores, Messrs. Forbis & Evans,* and *Mr. C. F. Kelley,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This cause was heretofore before this court on appeal by the defendant from an order granting an injunction *pendente lite*. Upon consideration of the facts exhibited in the record, the order of the district court was modified. (26 Mont. 265, 67 Pac. 1134.) Afterward an application was made to the district court to extend the scope of the order so as to include ore bodies expressly excluded from its operation by the order of this court, it being alleged that subsequent developments made in the disputed territory demonstrated that these ore bodies belong to a vein having its apex in plaintiffs' ground. Charges were also made that the defendant, though enjoined from mining within plaintiffs' boundaries and removing ore therefrom, burnt powder and other material in its own workings adjacent

to the place where plaintiffs' operations are carried on, for the purpose of obstructing the plaintiffs by producing illness in their employes and rendering it dangerous for them to remain in the vicinity, and that the smoke so created entered into the workings of plaintiffs and produced the intended effect. The district court denied the application. The plaintiffs appealed.

The situation of the property involved, and the controversy with reference to it, is illustrated by the following diagram:

The legal title to an undivided six-eighths interest in the Minnie Healy lode claim is admitted to be in the plaintiffs. The claims to the north, the Piccolo and Gambetta, belong to the defendant. The contention of plaintiffs is that the apex of the discovery vein in the Minnie Healy is found near the east boundary of the claim, at the discovery shaft, and passes through the claim from the east to the west nearly parallel with the south boundary line of the Piccolo, and crosses the west end line of the claim immediately west of the west shaft; that it dips to the north at an angle of about 70 degrees; and that the defendant is trespassing upon the exterior portions of it beneath the surface of the Piccolo and Gambetta claims. The

particular portion of the workings involved here is indicated by the irregular shaded figure near the southwest corner of the Gambetta, and consists of large bodies of ore on the eighth and lower levels of the defendant's workings down to the twelfth. The defendant is engaged in stoping and removing this ore. The contention of the defendant is that these ore bodies are a portion of the Leonard vein, having its apex in the defendant's ground to the north. Upon the former hearing the same contention was made, and this court, upon the evidence adduced, concluded that it did not tend to show that the plaintiffs had any ground for their contention. Accordingly the district court was directed to modify its order so as to exclude these ore bodies from its operation. This it was directed to do by limiting the scope of the order to the workings south "of a plane descending vertically into the earth on a line parallel with the south side line of the Piccolo lode claim, and passing through the point at which the north side line of the Gambetta lode claim intersects the third or 300-foot level south of the Leonard shaft." The line of this plane is indicated by the letters E, B.

The workings where the nuisance is alleged to have been committed are in the Minnie Healy ground, and are connected with the plaintiffs' workings by a crosscut extending south from the point F. It is charged that a fire was built in this crosscut near the point F, and that the smoke created by it was carried by the natural draft through the crosscut south into plaintiffs' workings.

The evidence in the record fails to disclose any additional development by the plaintiffs, tending to connect these excluded ore bodies with the apex of the Minnie Healy vein.

Much mining has been done by the defendant on the various levels from the 800 down to the 1,200 since the order was modified, but none of this development tends to support the conclusion that the ore bodies in controversy belong to the Minnie Healy vein. Furthermore, the plaintiffs have not by their operations so developed their own workings from the apex of their vein down to the disputed territory as to furnish substan-

tial evidence that their claim is probably well founded.   Indeed, while they concede that there is a vein in the defendant's ground dipping to the south, their own contention is based exclusively upon the opinion of their engineers that, if the vein having its apex in the Minnie Healy ground continues to dip at the same angle from certain points where it is exposed in the upper levels in their workings, it will reach the point where the defendant is conducting its operations.   This is not sufficient to overcome the presumption that the defendant owns the ores found beneath its own surface.   This presumption may not be overturned by speculative conjecture or even intelligent guess.   In any event, we do not think that, upon the showing made, we are justified in saying that the district court abused its discretion in refusing to enlarge the scope of the order.   A large discretion is lodged in that court in such matters, and, unless in a particular case it appears that there has been a clear abuse of it, this court will not interfere.   (*Parrot S. & C. Co.* v. *Heinze,* 25 Mont. 139, 64 Pac. 326, 53 L. R. A. 491, 87 Am. St. Rep. 386, and cases cited.)

There is no substantial ground for controversy as to the meaning of the order made by this court upon the former appeal. It is said by counsel for plaintiffs that it is ambiguous, in that there are two points at which "the north side line of the Gambetta lode claim intersects the third or 300-foot level, south of the Leonard shaft," and that, as this court evidently intended to so fix the position of the dividing plane as to preserve the property pending the litigation, a proper construction of the order would make the plane pass through the point G, instead of B. It is further said that, as a vertical plane passing through the point G cuts through the ore bodies, and leaves a portion of them to the north, to be mined out by the defendant, the injunction order should, in any event, be extended to prevent this result. After consideration of the facts then before the court, the order was made. The word "south" was used intentionally to indicate exactly the point through which the plane should pass. It is not ambiguous, but clear and explicit, as it was in-

tended to be, and evidently the district court did not misunderstand its import. The point named in the order is due south, while the point contended for by the plaintiffs is nearly due southwest; and it is only by a misinterpretation of the order that the plane of division between the parties is supposed, by reason of a misapprehension of the facts by this court, to have been so placed as to cut through the ore bodies.

There is some evidence in the record that, about the time the injunction was applied for, certain employes of the defendant were engaged in creating smoke in the crosscut extending south from the disputed ore bodies, and that by natural draft through this opening this smoke found its way into the workings of the plaintiffs within the Minnie Healy ground. It created discomfort to plaintiffs' employes, and temporarily stopped operations. It appears, however, that there was a controversy between the parties over the use of that crosscut; the plaintiffs' employes having attempted to put in a bulkhead near the point A to exclude the defendant's employes from the workings to the south. The smoke seems to have been created for the purpose of preventing the completion of this obstruction, and not to interfere with plaintiffs' mining. This crosscut is one of defendant's workings, and, by the terms of the modified order made by this court, the defendant and its employes were entitled to use it as a passageway to all the workings in the Gambetta and Piccolo claims south of the vertical plane for the purpose of inspection and repairs. (26 Mont. 265, 67 Pac. 1134.) The district court doubtless entertained the view that the occurrence was one of the incidents of a squabble for the possession and control of this opening, and was not intended to be a continuing nuisance, so as to interfere with the plaintiffs in the prosecution of their ordinary mining operations. As the evidence of the circumstances attending the incident is not very clear, and as the conclusion drawn from it by the district court is probably correct, this court will not reverse its action.

Let the order be affirmed.

*Affirmed.*