CONSOLIDATED GOLD AND SAPPHIRE MINING CO., RE-
SPONDENT, v. STRUTHERS ET AL., APPELLANTS.

(No. 2,847.)

(Submitted September 13, 1910.   Decided September 26, 1910.)

[111 Pac. 150.]

*Injunction Pendente Lite—Sawmills—Dumping Sawdust into
Streams—Evidence—Sufficiency—Findings in Equity Cases—
Review—Estoppel in Pais.*

Injunction *Pendente Lite*—Evidence—Sufficiency—Discretion.
   1.   It is not essential to the validity of an order granting an injunction
*pendente lite* that the evidence in support thereof should be of such
character as to warrant permanent injunctive relief in plaintiff's favor
at the trial upon the merits.   The granting of such an order lies within
the sound discretion of the trial court, subject to reversal only in case
of manifest abuse of such discretion.

Equity Cases—Findings—Review.
   2.   The supreme court will, on appeal, accept the findings of the trial
court in equity proceedings claimed to be unwarranted by the evidence,
unless the appealing party is able to show that the evidence pre-
ponderates against them.

Injunction *Pendente Lite*—Evidence—Sufficiency.
   3.   Evidence introduced in an action in which the district court
granted an injunction *pendente lite* restraining the defendants from
dumping sawdust into a stream, or upon its banks, causing interference
with plaintiff's placer mining operations, *held* not to show a prepond-
erance against the trial court's finding in favor of plaintiff's contention,
so as to justify a reversal of the court's order.

Same—Dumping Sawdust into Streams—Estoppel *in Pais.*
   4.   *Obiter:* If plaintiff mining company was estopped to deny the right
of defendants to maintain or operate a sawmill upon a portion of its
mining claim, because plaintiff had stood by silent while they ex-
pended large sums of money in erecting it and a dam in connection
therewith [a question raised, but *held* immaterial on appeal from
an order granting an injunction *pendente lite*], it cannot be said to
be estopped to deny the right of defendants to operate it in a man-
ner destructive of its rights in the premises, since it had a right to
assume that the sawmill operations would be carried on so as not
to create a nuisance.

*Appeal from District Court, Deer Lodge County; Geo. B.
Winston, Judge.*

ACTION by the Consolidated Gold and Sapphire Mining Com-
pany against A. D. Struthers and others.   From an order grant-
ing an injunction *pendente lite*, defendants appeal.   Affirmed.

*Messrs. Rodgers & Rodgers,* and *Mr. John Lindsay,* submitted a brief in behalf of Appellants.     *Mr. Lindsay* argued the cause orally.

*Messrs. Kirk, Bourquin & Kirk,* and *Mr. C. N. Davidson,* submitted a brief for Respondent.     *Mr. George M. Bourquin* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Upon the filing of the verified complaint, the district court of Deer Lodge county issued an order to show cause why an injunction should not be granted restraining defendants from doing certain things of which complaint was made by plaintiff. The defendants appeared by answer, and a hearing was had, at the conclusion of which the court granted an injunction *pendente lite,* by the terms of which defendants "are enjoined and restrained from depositing sawdust in the stream flowing through plaintiff's Ruby First placer claim described in the complaint, or upon the banks thereof, from whence it would ultimately naturally deposit in said stream above plaintiff's said placer claim, or upon the adjacent placer ground, and valley land, within said Ruby First placer claim, and as distinguished from the hill lands." From the order granting this injunction defendants appealed.

The injunction is not so broad as requested by plaintiff in its complaint. It refers only to one ground of complaint made, and it will therefore be necessary to consider the pleadings only so far as they relate to the particular matter covered by the injunction. The plaintiff alleges that it is the owner of the Ruby First placer mining claim, that it has expended large sums of money in constructing a steam dredge for conducting its placer mining operations on said claim, and in constructing a dam necessary for impounding water sufficient for its use. It then alleges that the defendants have built and are operating a sawmill immediately above the point where plaintiff is intending to operate its dredge; that there is a stream of water flowing by the sawmill

and through the placer claim; that defendants are depositing sawdust from their mill in this stream and upon the banks thereof, so that it naturally will be deposited in the stream; that such sawdust is being carried down said stream and intermingled with the sand, gravel, and soil of plaintiff's placer claim at the point where it intends to operate its dredge; that the sawdust thus deposited will clog and obstruct the machinery of the dredge, and prevent plaintiff from working it and from extracting the valuable minerals from the ground; and that defendants threaten to continue such operations.    Most of these allegations are denied in the answer, and defendants plead affirmatively matters by way of estoppel *in pais*.    In their brief counsel for appellants say: "The district court was not justified in issuing an injunction *pendente lite* restraining appellants from depositing sawdust in the stream flowing through the so-called Ruby First placer, etc., as the proof wholly failed to show that such had been done or was contemplated by appellants, but, on the contrary, demonstrated that the sawdust pile of appellants, to which sawdust was flumed from their sawmill, was so far removed from the creek and so many obstructions intervened that in the natural course of events it could not, and did not, work its way into the creek, and that the respondent has been in no wise damaged thereby."

Upon the hearing plaintiff introduced the testimony of a civil engineer who had been upon the ground a short time before the hearing, making surveys, and who observed the conditions about the sawmill and at the sawdust dump.    This witness testified that the sawdust was carried away from the mill to the dump by means of water running through a box flume.    Some of the pertinent testimony given by this witness follows: "Q.    And how did this dump lie at this time, with reference to the creek itself, through the ground?    A.    This dump is to the southwest of the creek, but there is a great deal of sawdust that is going down in the creek bed.    It is distributed all the way down to the dredge. *  *  *   Q.    And how did the water act after it had dumped upon this sawdust heap, or did you observe it?    A.    It would always dam itself up, and it would form a dam on the pile until

the pressure got great enough to break it, and then it would be released. Q. And where would it run to? A. It would run in all directions. Q. Any of it go down the creek? A. Some of it would. Q. Carrying sawdust with it, that you observed? A. Yes."

A witness Simon, for the plaintiff, testified that, while the main sawdust dump is some fifty feet from the creek, the sawdust is scattered about the creek bank and into the creek, and has been carried down the creek and deposited on the placer ground from the mill to a point below where the dredge was then located, a distance of about half a mile. This witness also testified that the sawdust, when water-soaked, sinks and is intermingled with the sand, gravel, and dirt; that, if deposited in the sand, gravel, and dirt to be worked by the dredge, the sawdust would clog up and obstruct the machinery, particularly the trommels and riffles, to such an extent that the valuable minerals would not be saved, and would also interfere with the working of the pumps.

Two other witnesses for plaintiff, William and John Goodwin, who constructed the dredge for plaintiff and who appear to be men of wide experience in handling dredges in placer operations, testified to substantially the same facts so far as the effect which the sawdust would have upon the operations of the machinery is concerned. The witness William Goodwin also testified that there was sawdust on the placer claim which had been washed down from the mill. It is admitted in the answer that defendants claim the right to continue their operations of the mill as theretofore conducted.

Much of the argument of counsel for appellants might be *apropos* if this question arose upon an appeal from an order granting a permanent injunction after a hearing upon the merits; but the rule applicable in such a case is not the rule to be applied in a case of an injunction *pendente lite*. And whether or not we might deem the exigencies of this case, as disclosed at the hearing, sufficient to warrant permanent relief by way of injunction, is not now for consideration. It is not essential to the validity of an order granting an injunction *pendente lite* that the evidence in support of the order should be of such character as to

warrant permanent relief in plaintiff's favor at the trial upon the merits. (*Heinze* v. *Boston & Mont. C. C. & S. Min. Co.,* 26 Mont. 265, 67 Pac. 1134.)  In fact, the granting of an order for an injunction *pendente lite* is within the sound discretion of the trial court, and, in the absence of a manifest abuse of such discretion, the order will be affirmed. (*Parrot S. & C. Co.* v. *Heinze,* 25 Mont. 139, 87 Am. St. Rep. 386, 64 Pac. 326, 53 L. R. A. 491; *Heinze* ·v. *Boston & Mont. C. C. & S. Min. Co.,* 30 Mont. 484, 77 Pac. 421.)

However much the evidence offered by the defendants may conflict with that given by the plaintiff, we do not feel disposed to interfere with the finding of the trial court that the evidence preponderates in favor of plaintiff's contention. The trial court, in the first instance, was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. It occupied a position much more advantageous than does this court, in that it heard the witnesses testify, observed their demeanor, and was therefore much better qualified to weigh the evidence. Under such circumstances, this court has repeatedly refused to interfere. Not only so, but it is the rule now too well established in this state to be longer open to dispute, that this court will accept the findings of the trial court in equity proceedings, unless the appealing party can show that the evidence preponderates against such findings. (*Quirk* v. *Rich,* 40 Mont. 552, 107 Pac. 821; *Watkins* v. *Watkins,* 39 Mont. 367, 102 Pac. 860; *Pope* v. *Alexander,* 36 Mont. 82, 92 Pac. 203; *Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918; *Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6.)  Upon the record here presented, we are unable to reach the conclusion that defendants have sustained the burden thus imposed.

Much attention is devoted in the briefs to a discussion of the question of equitable estoppel; but we are unable to understand its application upon this appeal. Upon a trial of the case on its merits, it may become an important matter, but, if we should agree with appellants that the evidence discloses an estoppel *in pais,* we are unable to see wherein it would effect the result so far as the appeal from this order is concerned. As we read the

injunction, it does not restrain defendants from dumping sawdust upon plaintiff's land, or from dumping it in substantially the same place as heretofore. It only restrains them from depositing it in the creek or upon the banks whence it would in the ordinary course of defendants' operations naturally get into the creek and upon plaintiff's placer and valley lands. But, if there is any doubt as to the meaning of the language employed in the injunction, the utmost that can be said is that defendants are enjoined from directly depositing sawdust upon plaintiff's placer ground and valley land; but in juxtaposition with the words "placer ground and valley land" the court placed the phrase "as distinguished from the hill land." So that there is not any injunction restraining defendants from dumping sawdust upon the hill land, and, as we read the evidence, the sawdust dump is upon the hill land; so that defendants cannot complain, and, by the exercise of good faith and ordinary care, they can continue their operations without fear of being adjudged in contempt. Upon the showing made, the trial court would have been justified in granting an injunction substantially in the language of this one, even though defendants' sawdust dump had been upon their own land. Certainly it cannot be claimed that, if plaintiff stood by silent and observed and permitted defendants to expend large sums of money in erecting their mill and dam upon one portion of the Ruby Placer, plaintiff would thereby be estopped to set up title to any other portion of such claim. If at the trial upon the merits it should appear that plaintiff is estopped at all, such estoppel would not go further than to preclude plaintiff from asserting title to that portion of the Ruby Placer actually occupied by defendants. Or, if it could be said that plaintiff is estopped to deny the right of defendants to maintain their sawmill or to operate it generally, it cannot be held estopped to deny the right of defendants to operate it in a particular manner, if such manner is shown to be destructive of plaintiff's rights. (*Blackford* v. *Heman Construction Co.,* 132 Mo. App. 157, 112 S. W. 287; *Matthews* v. *Stillwater Gas & El. L. Co.,* 63 Minn. 493, 65 N. W. 947; *Royce* v. *Carpenter,* 80 Vt. 37, 66 Atl. 888.) And the reason for this rule is to be found in

the fact that it cannot be said that plaintiff, while standing by silent, if it did so, must have anticipated that defendants would operate in a particularly obnoxious manner.   Certainly it cannot be said that plaintiff must have assumed that defendants would dump sawdust in the stream and thereby commit a misdemeanor under section 8797, Revised Codes; on the contrary, every fair presumption is that plaintiff anticipated that defendants would so care for the sawdust as not to commit a crime or create a nuisance.

We do not find any error in the record.   The order of the district court granting the injunction is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.