RINGLING, RESPONDENT, v. MAHURIN ET AL., APPELLANTS.

(No. 4,752.)

(Submitted January 4, 1921. Decided February 4, 1921.)

[197 Pac. 829.]

*Mines and Mining Claims—Quieting Title—Temporary Injunctions—Motion to Dissolve—Valid Locations — Statutory Requirements—Substantial Compliance.*

Injunction *Pendente Lite*—Complaint—Insolvency.
  1. The purpose of a temporary injunction in an action to quiet title to a mining claim is to preserve the estate undiminished until determination of the question of title; hence an allegation of defendant's insolvency in the complaint is immaterial.

Mining Claims—Valid Location—Federal and State Statutes—Substantial Compliance Necessary.
  2. Evidence that the locator of a mining claim substantially complied with the requirements of the federal statutes is not alone sufficient to a valid location, a substantial compliance with the state statutes also being required.

Same—Location—Statutes—Effect of Amendments.
  3. *Held,* that sections 2283 to 2296, Revised Codes, modifying to some extent the requirements of the law with relation to the location of mining claims, go no further than to direct the courts to disregard defects or irregularities in the posted and recorded notice and the failure to do any of the other acts made necessary to complete a location, when it appears that such acts have in fact been done before a location of the same ground has been made by another, and do not excuse the performance of any act, even though the subsequent locator has notice of a prior location which does not comply with the statute.

Same—Temporary Injunction—Motion to Dissolve—When Refusal Proper.
  4. Where the evidence on the hearing of a motion to dissolve a temporary injunction was in sharp conflict on the question of title to the mining claim in controversy, the trial court's action in refusing to dissolve it was proper, especially where it required plaintiff to give ample security to protect defendants against loss.

Same—Temporary Injunction—Dissolution—What not Proper Ground.
  5. The reprehensible conduct of plaintiff in entering upon and extracting ore from a mining claim after defendants had been enjoined from doing so was not sufficient ground for dissolution of the injunction, the defendants' remedy having been an application for a modification thereof so as to prevent such acts.

---

1. Authorities on the right to enjoin the removal of mineral from mines and mineral locations are collected in notes in 1 Am. St. Rep. 376 and 99 Am. St. Rep. 747.

[59 Mont. 38.]

Same—Injunction too Broad—Remedy.

6. Where an injunction is broader in its terms than it should have
been, and prevents defendants from doing their annual representation
work on the mining claims involved, the proper course is to apply
for a modification so as to permit such work to be done.

*Appeal from District Court, Meagher County, in the Four-
teenth Judicial District; A. C. Spencer, a Judge for the Thir-
teenth District, Presiding.*

ACTION by Richard T. Ringling against M. M. Mahurin and
others. From an order refusing to dissolve an injunction
*pendente lite,* defendants appeal. Affirmed.

*Messrs. McIntire & Murphy,* for Appellants, submitted a
brief; *Mr. H. G. McIntire* argued the cause orally; *Mr. J. L.
Templeman* and *Mr. Sydney Sanner,* of Counsel.

In the pleadings of the plaintiff there is no allegation what-
ever of insolvency on the part of defendants, and their conse-
quent irresponsibility in damages for any possible injury which
might be done by them to the mining claims in question.
"Where the sole ground upon which an injunction is sought
is the irreparable nature of the injury, the solvency or insol-
vency of the defendant is sometimes important." (2 Spelling
on Injunctions, 2d ed., sec. 1042.)

Doubtless, the judge issuing the injunction on a complaint
alone was justified by the strict letter of the law in so doing,
but we submit that as to unpatented mining claims only re-
cently located much more care should be observed than was
shown in the present case, at least no such drastic step should
be taken on an *ex parte* application. But on the pleadings in
this case, and on the evidence introduced, we submit such
injunction should have been at once dissolved, and that the
lower court erred in refusing so to do. The moving defend-
ants not only pleaded, but proved, *prima facie* at least, valid
locations of their Iron Master and the Legal Tender claims,
for the location notices of those claims are not only in strict
accordance with the statutes, Revised Codes, sections 2283 and

2284, and consequently, by section 2284, *"prima facie* evidence of all facts properly recited therein,'' but it was both pleaded and proved, with no attempt to deny it, that respondent and his agent had full constructive and actual notice of such locations when they attempted to locate the same ground as the Aubrey B, Mary C, and Richard T in December, 1918. This, by the statute (Rev. Codes, sec. 2293), made immaterial any possible defect in the location notices of the Iron Master and Legal Tender. (*Heilman* v. *Loughrin,* 57 Mont. 380, 188 Pac. 370.)

Despite what some of the earlier state authorities may have decided to the contrary, there has been and can be no longer any doubt that in the location of a mining claim on public, unappropriated mining ground of the United States, a discovery of ore in place need not precede the location and marking of the claim on the ground. That has been finally put to rest by *Creede & C. C. Min. etc. Co.* v. *Uinta Tunnel etc. Co.,* 196 U. S. 337, 49 L. Ed. 501, 25 Sup. Ct. Rep. 266 [see, also, Rose's U. S. Notes]. And since the radical amendment to the Montana statutes concerning the location of mining claims, adopted in 1907, the rule in this state, that all local statutory steps were mandatory has become obsolete. We submit, when ore in place is exposed, the law entitles one to locate the ground. It is wholly immaterial whether such exposure is made in a shaft of any particular size, nor when it is made, so long as the valid rights of others have not intervened, and so, as we understand them, are the latest enunciations of the courts. The Montana statutes (Rev. Codes, secs. 2283 *et seq.*) concerning mining claims in so far as the steps therein prescribed are concerned, in that no forfeiture or invalidity is prescribed for a failure to follow them, are directory and not mandatory. (*Clark-Montana Realty Co.* v. *Butte & Superior Copper Co.,* 233 Fed. 547.) This decision was affirmed by the circuit court of appeals (*Butte & Superior Copper Co.* v. *Clark-Montana Realty Co.,* 248 Fed. 609, 160 C. C. A. 509) and by the supreme court of the United States

(*Butte & Superior Copper Co.* v. *Clark-Montana Realty Co.,*
249 U. S. 12, 63 L. Ed. 447, 39 Sup. Ct. Rep. 231) after a
very vigorous contention for a contrary ruling.  (See, also,
*Yosemite etc. Mill. Co.* v. *Emerson,* 208 U. S. 25, 52 L. Ed. 374,
28 Sup. Ct. Rep. 196 [see, also, Rose's U. S. Notes]; *Sturtevant* v. *Vogel,* 167 Fed. 448, 93 C. C. A. 84.)

Whatever reason may have existed in the past to justify the
early rulings of this court to hold that the provisions of the
local statutes were mandatory ceased with the radical amendment of 1907 above referred to, and "when the reason of a
rule ceases so should the rule itself." (Rev. Codes, sec. 6178.)

An injunction is an equitable remedy, and it is a cardinal
rule of equity jurisdiction that he who seeks equity must do
equity.  To do precisely what one has invoked the courts to
prevent another from doing not only shocks one's ideas of
what constitutes fair play, but in spirit, at least, is a gross
and flagrant contempt of court.  The authorities, although we
are pleased to find but a few of them, presumably because
such conduct has been rare, vigorously denounce the conduct
and punish the offender.  Thus in 2 Spelling on Injunctions,
section 1112, it is said: "As a general rule, the writ of injunction only restrains action by the party against whom it is
allowed and issued, and the plaintiff who obtains its allowance
is not liable in contempt for doing the acts enjoined; but for
a plaintiff to violate his own injunction, when the evident
purpose of the writ is to preserve an existing status until a
final adjudication, is a gross abuse of the process of the court,
for which the injunction may be dissolved." (See, also, *Vanzandt* v. *Argentine Min. Co.,* 48 Fed. 770; *Haight* v. *Lucia,*
36 Wis. 355.)

*Mr. Earle F. Angell* and *Mr. Edward Horsky,* for Respondent, submitted a brief; *Mr. Horsky* argued the cause orally.

"In this class of cases the solvency or insolvency of the
defendant is of no moment.  Therefore an allegation of insolvency is immaterial." (3 Lindley on Mines, 3d ed., sec. 872;

*Boyd* v. *Desrozier,* 20 Mont. 444, 52 Pac. 53; *Palmer* v. *Israel,*
13 Mont. 209, 33 Pac. 134; 27 Cyc. 659–662.)  The solvency or
insolvency of the appellants does not affect plaintiff's right
to the injunction. (*Boyd* v. *Desrozier, supra; Richards* v.
*Dower,* 64 Cal. 62, 28 Pac. 113; *Mabel Min. Co.* v. *Pearson
Coal etc. Co.,* 121 Ala. 567, 25 South. 754; *Waskey* v. *McNaught,*
163 Fed. 929, 90 C. C. A. 289; *Crisman* v. *Heiderer,* 5 Colo.
589.)  Removal of minerals is in itself an irreparable injury.
(27 Cyc. 665, citing *Merced Min. Co.* v. *Fremont,* 7 Cal. 317, 68
Am. Dec. 262.)

Appellants next contend that because section 2284, Revised
Codes, makes the certificate of location *prima facie* evidence
of all facts recited therein, any defect in the location is imma-
terial.  While the certificate of location is *prima facie* evidence
of all facts properly recited therein, this does not prevent
attacking the location in showing that in fact the requirements
of the statute have not been complied with. (*Ferris* v.
*McNally,* 45 Mont. 20, 121 Pac. 889.)  In the instant case,
respondent's evidence clearly establishes that appellants' prede-
cessor in interest did not do the required amount of excavation
in his discovery shafts within the statutory time, or at any
other time prior to the time appellants located the ground in
controversy, or at all.  There is substantial evidence tending
to support the allegations of the complaint, which proposition
the appellants nowhere question; and appellants having con-
ceded in their brief herein that as to whether the alleged
locators of appellants' 'Iron Master and Legal Tender lodes
had done the required amount of excavation in the discovery
shafts, there is "a sharp and decided conflict in the testimony"
as between the two sides of the case, there was manifestly no
abuse of discretion, and the trial court's refusal to dissolve
will not be disturbed on appeal. (*Parrot Silver & Copper Co.*
v. *Heinze,* 25 Mont. 139, 87 Am. St. Rep. 386, 53 L. R. A. 491,
64 Pac. 326; *MacDonald* v. *Gerrick,* 29 Mont. 373, 74 Pac.
1083; *Anaconda Copper Min. Co.* v. *Butte & Boston Min. Co.,*
17 Mont. 519, 43 Pac. 924; *Boyd* v. *Desrozier,* 20 Mont. 444,

52 Pac. 53; *Maloney* v. *King,* 25 Mont. 188, 193, 64 Pac. 351; *Consolidated etc. Min. Co.* v. *Struthers,* 41 Mont. 551, 554, 111 Pac. 150; *Lowery* v. *Cole,* 47 Mont. 64, 130 Pac. 410.)

The *Ferris-McNally Case,* above, was decided five years after the 1907 amendment to the Revised Codes, upon which statute as amended appellants seek to lay stress, and that decision affords a complete answer to appellants' contention regarding the effect of the statute as amended. In that case, the jury found that the cubical contents of the discovery cut on the Grotto claim were less than 150 feet, and this court held that such finding justified the trial court in holding as a matter of law that at the time defendants, who were subsequent locators, made their location, the ground was open to location. (See, also, *Sanders* v. *Noble,* 22 Mont. 110, 55 Pac. 1037; *Upton* v. *Larkin,* 7 Mont. 449, 17 Pac. 728; *Mares* v. *Dillon,* 30 Mont. 117, 75 Pac. 963; *Baker* v. *Butte City Water Co.,* 28 Mont. 222, 104 Am. St. Rep. 683, 72 Pac. 617; s. c., 196 U. S. 119, 49 L. Ed. 409, 25 Sup. Ct. Rep. 211; *Chrisman* v. *Miller,* 197 U. S. 313, 49 L. Ed. 770, 25 Sup. Ct. Rep. 468 [see, also, Rose's U. S. Notes].)

"The dissolution of the injunction does not follow as a matter of course or absolute right from the fact that the party who obtained it has disobeyed its commands." (*Twenty-one Min. Co.* v. *Original Sixteen to One Mine,* 240 Fed. 106, 153 C. C. A. 142.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by plaintiff on July 20, 1920, to quiet title to three unpatented mining claims situated in Meagher county, and designated as the Aubrey A, the Mary B, and the Richard T, the first two of which were located on December 14, 1918, and the last on December 21, 1918, by one Haines, predecessor of plaintiff. The complaint states a cause of action with reference to each claim in the form appropriate to present the issues usually tried in such actions. There is

also a cause of action with reference to each claim asking injunctive relief to restrain trespasses by the defendants pending a trial on the merits. Upon the filing of the complaint the court issued the injunction as prayed for, without notice, requiring the defendants, however, to execute an undertaking in the sum of $250. Later, the penalty of the undertaking was increased to $25,000. The defendants, other than Stohr and Luhrsen, appeared and filed their answers on July 29, and at the same time moved the court for a dissolution of the injunction. The defendants Huxley and Richard Manger disclaimed any interest in the premises in controversy. The defendants Danaher and Tower put in issue the allegations of the complaint and disclaimed any interest in the ground covered by plaintiff's claims, except so far as they are in conflict with two unpatented claims designated by them as the Iron Master and Legal Tender. With respect to these, they alleged that they were in possession and entitled to the possession of them as lessees of the defendant Clara Manger, who is the true owner. Clara Manger, after putting in issue the allegations of the complaint, alleged that she is the owner of the Iron Master and the Legal Tender claims under and by virtue of locations of them made by defendant Huxley, her predecessor in interest, on January 17 and 18, respectively, 1917. The defendants Stohr and Luhrsen made no appearance. The defendant Mahurin filed a separate answer and cross-complaint in which, besides controverting the allegations of both the plaintiff and the defendants other than Huxley and Richard Manger, asserted title in himself under two unpatented claims designated as the Marble and Tipperary, the former of which was located on December 1, 1917, and the latter on January 22, 1918. There is no controversy but that the several claims mentioned cover the same ground. The motion to dissolve the injunction came on for hearing by the court on September 7, 1920. Defendants assumed the burden of proof and introduced both oral and documentary evidence. The plaintiffs also introduced oral and documentary evidence. At the close of

the hearing the court made its order refusing to dissolve the injunction. The answering defendants, other than Mahurin, have appealed.

At the opening of their brief, counsel for defendants suggest that the complaint does not state a cause of action because [1] it does not allege that the defendants are insolvent. The only value which a mining claim has, speaking generally, is the mineral contained in it. Therefore trespass upon it for the purpose of extracting ore—which is the charge here—tends to exhaust it, thus doing it an irreparable injury. The purpose of an injunction in such case is to preserve the estate pending the determination of the question of title. In other words, its purpose is to prevent the diminution of the value of the estate until the question of title is determined, so that the plaintiff, if successful, may have it unimpaired at the end of the litigation. An allegation of insolvency is, therefore, wholly immaterial. (*Boyd* v. *Desrozier*, 20 Mont. 444, 52 Pac. 53; 2 Lindley on Mines, 3d ed., sec. 872.)

The principal contention made by counsel is addressed entirely to the ultimate question: Who, in fact, is the owner of the ground in controversy? rather than to the question whether the court wisely exercised its discretion in continuing the injunction in force until the determination of the question of title by a trial on the merits. Conceding that the court properly [2] issued the injunction in the first place, defendants insist that it appears from the evidence introduced by them, which was not disputed by plaintiff, that the Legal Tender and Iron Master claims were located prior to those of the plaintiff; that the plaintiff and his predecessor both had constructive as well as actual notice of these locations when Haines attempted to make those of plaintiff; that defendants made their discovery before they made their locations, which appears both by the testimony of witnesses introduced and by the recitals in their recorded notices, which are *prima facie* evidence of all the facts properly recited therein; and hence, that the court erred in refusing to dissolve the injunction.

In making this contention, counsel proceed upon the theory that whatever defects in defendants' locations may have been disclosed by the testimony of plaintiff's witnesses, the foregoing evidence clearly showed that defendants were vested with the title as against plaintiff's, and therefore, that the injunction should have been vacated. In support of their contention they cite several cases, among them *Clark-Montana Realty Co. v. Butte & Superior Copper Co.*, 233 Fed. 547, decided by the United States district court for the district of Montana (s. c., 248 Fed. 609, 160 C. C. A. 509) and *Butte & Superior Copper Co. v. Clark-Montana Realty Co.*, 249 U. S. 12, 26, 63 L. Ed. 447, 39 Sup. Ct. Rep. 231; *Yosemite etc. Mill. Co. v. Emerson*, 208 U. S. 25, 30, 52 L. Ed. 374, 28 Sup. Ct. Rep. 196; [see, also, Rose's U. S. Notes], and *Sturtevant v. Vogel*, 167 Fed. 448, 93 C. C. A. 84. There is no question but that these cases furnish support for the contention made by counsel. To accept the doctrine announced by them, however, would necessitate the overturning of the rule which has been observed by this court throughout its existence, *viz.*, that the validity of a location of a mining claim depends upon a substantial compliance by the locator not only with the requirements of the federal statutes, but also those of the state statute. While the notice of location is *prima facie* evidence of all facts properly recited therein (Rev. Codes, sec. 2284), nevertheless, the *prima facie* case made by it does not prevent an attack upon it by showing that the mandatory provisions of the statute declaring what steps are necessary to make a valid location have not in fact been complied with. (*Belk v. Meagher*, 3 Mont. 65; *Russell v. Hoyt*, 4 Mont. 412, 2 Pac. 25; *Garfield M. & M. Co. v. Hammer*, 6 Mont. 53, 8 Pac. 153; *Upton v. Larkin*, 7 Mont. 449, 17 Pac. 728; *Hamilton v. Huson*, 21 Mont. 9, 53 Pac. 101; *Mares v. Dillon*, 30 Mont. 117, 75 Pac. 963; *Hickey v. Anaconda Copper Min. Co.*, 33 Mont. 46, 81 Pac. 806; *Ferris v. McNally*, 45 Mont. 20, 121 Pac. 889.)

It is true that the legislature in the passage of the Act [3] approved February 18, 1907 (Rev. Codes, secs. 2283–

2296), relaxed somewhat the stringency of the rule established by these cases. It validated the locations theretofore made which did not comply with the requirements of the laws in force up to that time, provided the rights of third persons had not intervened prior to the passage of the Act, and the making and recording of such locations conformed to its requirements. (Sec. 2292.) Section 2293 declares that the Act "shall not be deemed mandatory" with reference to the period of time within which an act should be done, if it shall be performed "before the rights of third persons have intervened," and that "no defect in the posted or recorded certificate shall be deemed material except as against one who has located the same ground or some portion thereof in good faith without notice." This legislation does not relax the rule further than to direct the courts to disregard defects or irregularities in the posted and recorded notice, and the failure to do any of the other acts made necessary to complete a location, when it appears that such acts have in fact been done before a location of the same ground has been made by another. It does not declare that a failure to do the other acts required to perfect a location shall not invalidate it. In this respect it merely declares that the period of time prescribed within which an act may be performed shall not be deemed mandatory if it is performed before the rights of third parties have intervened. It does not purport to excuse the performance of the act, even though the subsequent locator has notice of a prior location which does not comply with the statute. The case of *Heilman* v. *Loughrin*, 57 Mont. 380, 188 Pac. 370, cited by counsel, does not hold to the contrary. Therefore, the rule announced in the other cases cited by counsel is not applicable under the statute of this state.

The reason underlying the decisions of this court cited *supra*, is that the locator shall demonstrate his good faith by performing the several acts substantially as required by the statute, before he can effectively assert, as against any other citizen, an exclusive right to the portion of the public domain covered by his alleged location. The statute *supra*, in relaxing the rule

only. in the respects noted, impliedly affirms it in all other respects. To sustain the contention of counsel would require this court to determine finally the question of title, whereas the district court did not undertake to determine it, but merely whether, there being a controversy over the title, it should exercise its discretion in preserving the property until it could finally determine this question upon a trial on the merits.

There was evidence to the effect that Huxley, the locator of the Legal Tender and the Iron Master claims, did nothing more than to post his notices and mark the boundaries, having appropriated as the excavations which he should have made, as required by section 2283 of the Revised Codes, those which had been made by others years before in locating and endeavoring to develop the same ground, subsequently abandoned. [4] There was also evidence that no other substantial work was thereafter done. There was a sharp conflict in the evidence on this point and therefore on the question of title to the ground in controversy. Under the rule announced in many decisions by this and other courts, the district court properly exercised its discretion in continuing the injunction, especially since the court had required the plaintiff to give ample security to protect the defendants against possible loss. (*Boyd* v. *Desrozier, supra; Parrot Silver & Copper Co.* v. *Heinze,* 25 Mont. 139, 87 Am. St. Rep. 386, 53 L. R. A. 491, 64 Pac. 326; *Maloney* v. *King,* 25 Mont. 188, 64 Pac. 351; *Heinze* v. *Boston & Mont. C. Copper & Silver Min. Co.,* 30 Mont. 484, 77 Pac. 421; *Lowery* v. *Cole,* 47 Mont. 64, 130 Pac. 410; *Consolidated Gold & S. Min. Co.* v. *Struthers,* 41 Mont. 551, 111 Pac. 150; *Twenty-one Min. Co.* v. *Original Sixteen to One Mine,* 240 Fed. 106, 153 C. C. A. 142, and cases cited.)

Counsel contend that since it appeared from the evidence [5] that after the injunction was issued and pending the hearing of the motion, plaintiff entered upon the ground and engaged in mining operations thereon, the injunction should have been dissolved as of course. It appeared that after the injunction was issued, employees of plaintiff did some work

in the way of enlarging some of the excavations on the ground, but it does not appear that these operations were continuing at the time of the hearing or that any ore had been or was being removed. The evidence in this connection is at best meager. It is entirely consistent with the notion that the work was done for the purpose of annual representation and not for the extraction and removal of ore. But let it be assumed that the purpose of the work was to extract and remove ore and that plaintiff in doing it was guilty of an abuse of the process of the court, as counsel contend (*Vanzandt* v. *Argentine Min. Co.*, 48 Fed. 770), this conduct was reprehensible; but it does not therefore follow, that the court should have dissolved the injunction. If it had done so, plaintiff would have no cause to complain, for he could not insist that the court was in error in refusing to exercise its discretionary power in his favor under these circumstances. It does not appear, however, that this feature of the evidence was called to the attention of the court, or that defendants asked that the injunction be made reciprocal, or that it be modified in any respect. If its attention had been called to it, doubtless the court would have modified the injunction so as to prevent any work being done on the ground other than annual representation work until a trial of the question of title and a final decree determining it. If the defendants desired to preserve the *status quo* pending the litigation, they should have applied to the court for a modification of the injunction so that it would accomplish this purpose.

Counsel say also that, as the injunction stands, it prevents [6] defendants from doing their annual representation work. Here again the proper course for defendants to have pursued was to apply to the court for a modification of the injunction so as to permit this. If, at any time pending the litigation, it becomes necessary to perform such work, upon proper application to the court permission will doubtless be granted. That the injunction is broader in its terms than it should have been is no reason why this court should reverse the lower court in

issuing it, especially so as it is not apparent that objection on this ground at the time the motion to dissolve it was submitted.

The order is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES REYNOLDS, COOPER, HOLLOWAY and GALEN concur.

