No. 12115

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

LAWRENCE J. McCARTHY et al.,

                    Plaintiffs and Respondents,

    -vs-

BUD MORRIS,

                    Defendant and Appellant.

Appeal from: District Court of the Fourth Judicial District,
            Honorable Emmet Glore, Judge presiding.

Counsel of Record:

    For Appellant:

        William Dee Morris argued, Helena, Montana.

    For Respondent:

        Alex C. Morrison argued, Plains, Montana.

                              Submitted: April 24, 1972

                                    Decided: MAY 9 - 1972

Filed:   MAY 9 - 1972

_Thomas J. Kearney_
                         Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a verdict and judgment resulting from a jury trial in the fourth judicial district, county of Sanders, the Hon. Emmett Glore, district judge presiding.

The facts giving rise to this action show that the Old West still lives. The complaint filed by plaintiffs on September 23, 1970, charges defendant with trespass on an unpatented mining claim located in Sanders County. The prayer asked for a restraining order, an order to show cause why the restraining order should not be made permanent, and $5,000 exemplary damages. Judge Jack L. Green on September 23, 1970, issued the temporary restraining order and set October 13, 1970, to hear the order to show cause why a permanent injunction should not issue.

On September 30, 1970, counsel for all litigants entered into a stipulation that allowed defendant to remove a D-7 Cat from the mining claim.

Counsel for defendant filed an answer to plaintiffs' complaint and a counterclaim on October 13, 1970, asking to have the temporary injunction dissolved and for certain specified damages. By further stipulation of counsel the show cause hearing was set aside, and after further pleadings the case went to trial on June 14, 1971.

Testimony at the trial indicated that early in the spring of 1968 plaintiffs Stobie, Rogers and Stonebrook flew over and noted a tunnel on a mining claim located in the Swamp Creek area near Plains, Montana. Several weeks later, in early March, the three plaintiffs hiked into the area and posted two notices of location. Prior to that they had talked with plaintiff Lawrence J. McCarthy, a graduate engineer from the Montana School of Mines and brother-in-law of Stobie, who made out their notices of

location and from McCarthy they learned what was necessary to do for the location. One of the notices was put in a tobacco can and nailed to a tree just left of the adit (the entrance to the mine tunnel). The date of these activities was March 3, 1968. While at the mine they mucked out the tunnel, crawled in and explored it and took some sample ore. These samples they turned over to McCarthy for testing.

Some three weeks later, Stobie, Rogers and Stonebrook returned to the mine site with tools, tape and equipment. They laid out their claim by blazing the corners, taping the corner trees with forest service marking tape and making the measurements necessary to file their location at the Sanders County courthouse. They named the claim 5 D's and an M, the initials of the children of Stobie and Stonebrook.

The claim was filed in the records of the Sanders County clerk and recorder on May 3, 1968, in Volume 22 of Mining Locations, at page 155. It was cross-filed in another volume under the names of the various plaintiffs. Testimony revealed that in the years 1969 and 1970, assessment work was done on the claim and recorded at the office of the county clerk and recorder of Sanders County.

In the late summer of 1969, several of plaintiffs were at the tunnel site and noticed that someone had pulled the tobacco can (containing their notice of location) off the tree and thrown it on the ground. Plaintiff Stobie put the notice back in the can and put the can on a ledge at the face of the portal to the mine.

In the early spring of 1970, when Stobie returned to the claim, he found a glass jar where he had left the tobacco can and in the jar another notice dated several days prior to his arrival, June 17, 1970. The tobacco can was not located at the tunnel site. Upon returning from the mine site, Stobie notified all plaintiffs

of what he termed the "claim jumping". Subsequently plaintiffs returned to the mine site and posted "No Trespassing" signs at the adit and on all four corners of the claim.

In August 1970, when plaintiffs went to the mine to do their annual assessment work, they found their signs down and posted at the adit was a sign stating "No Trespassing, Keep Out". On the reverse of that sign it said: "Five hundred dollars reward, dead or alive, for conviction of persons destroying property, Lost Thumb, Incorporated".

Plaintiff McCarthy on checking the location notice learned that defendant Bud Morris was the locator and several weeks after learning this he ran into Morris at one of the local thirst quenching establishments in Plains. He informed Morris of the previous location of the 5 D's and an M claim. Defendant proved to be less than friendly, so no further discussion took place then.

In mid-September 1970 while flying over the claim to check it, plaintiffs saw a D-7 Cat at the adit and noted that it had dozed up a considerable area around the adit, to say nothing of trenches cut by the dozer. Plaintiffs immediately hired counsel who filed the complaint, heretofore mentioned, on September 23, 1970. Either on September 23 or 24 (the exact day being in conflict), three of plaintiffs went back to the mine, drained the fuel out of the D-7 Cat and dumped a 50 gallon barrel of fuel out upon the ground. That was sufficient to stop the D-7 Cat and several nights later the engine block froze due to the fact no antifreeze was in the radiator or it was insufficient to withstand a cold fall night above 5,000 feet altitude. The D-7 Cat still rests at the mine site.

The above enumerated facts are what the jury heard from plaintiffs and their witnesses. Defendant Morris' story is entirely different.

Defendant, Bud Morris, testified he learned about the old mine tunnel from one Larry Christensen on June 17, 1970. Several days later Christensen took him to the mine site where he posted a notice at the adit coverning a number of claims. The date on each certificate filed was June 24, 1970. During cross-examination of defendant it was brought out that the notice at the mine named it either the RJM claim or R and M, but the filed certificate of location notice named it the "Lost Thumb". Defendant could not explain why the RJM or the R and M on the June 17 notice, and the "Lost Thumb" on the certificate, but he testified that in the week between the location and the filing he had a thumb torn off in an accident and that is why he called the claim the "Lost Thumb".

Defendant admits that in late June or early July plaintiff McCarthy accosted him in a bar and informed him that McCarthy and others had located the claim in 1968 and had ordered him off the claim, however defendant considered his location to be prior and valid and continued during the summer to construct a road into the claim and develop it. In all, he alleged he spent approximately $13,000 prior to the restraining order of September 23, 1970.

In regard to the mine site at the time he went there with Christensen in June 1970, defendant testified that no work had been done on it recently; the opening of the tunnel was pretty well caved in and the tunnel looked as though some old miner had just walked away from it. He denied seeing plaintiffs' notice, previously mentioned as having been put in a tobacco can and nailed to a tree near the entrance, but he testified that he had put his notice of location in a tobacco can, had turned it upside down, and nailed it to a crevice of rock. He said that Christensen had found, just inside the pit, a little jar on a ledge. That the content of the jar was a claim notice that was

damp; the name of the locator was Stobie; and the date on it looked like 1960. Because of his interpretation of that date and the lack of recent work at the mine site, he claimed the mine.

In addition, defendant testified that when he filed his claims on June 14, 1970, he searched the records at the court-house but did not look under either the name of Stobie or any of the named plaintiffs, or under the name location of plaintiffs' 5 D's and an M.

In spite of finding the above mentioned location notice and warnings given him during late June or early July, 1970, by McCarthy, defendant proceeded throughout the summer to prepare and develop the mine. He obtained from the head ranger of the Forest Service a permit to construct a road into the mine and in so doing he agreed to the federal government's requirements of road construction. He posted a bond with the Forest Service and made an agreement with it on the timber that was to be cut and used. All of this ended on September 23, 1970, when the restraining order was issued and when plaintiffs drained the fuel out of the D-7 Cat which was several miles back in a very inaccessible area. Defendant alleges that due to lack of fuel he was unable to move the Cat and cold temperatures caused the block to freeze resulting in several thousands of dollars damages.

All of the above testimony of both plaintiffs and defendant was before the jury and it found for the plaintiffs:

> "1. That the mining claim 5 D's and M is a valid claim and is the sole property of the plaintiffs herein.
>
> "2. We assess actual damages against the defendant Bud Morris and in favor of the plaintiffs in the amount of $ none.
>
> "3. We assess exemplary damages against the defendant, Bud Morris, and in favor of the plaintiffs in the amount of $ none."

Eight principal issues with sub-issues were raised on appeal but we summarize them into three:

1. The proper location of mining claims: The continued completion of acts to retain a possessory interest in the claim to plaintiffs; proper and legal notice, actual and constructive; all required in order to support plaintiffs' possessory interest.

2. Same as Issue 1 for the defendant with the further but detailed application of federal law on "multiple use".

3. Damages---to either party. Plaintiffs claimed no actual damages, only exemplary and with no valid trespass action, no damages. Damages to defendant by reason of plaintiffs' unlawful and destructive act. Defendant should have been awarded damages regardless of plaintiffs' purported possessory interest.

Number 1 and 2 above concern themselves with the category of issues arising out of the location and ownership of the mine. We find no merit to these issues for they are entirely fact questions submitted to a properly instructed jury which found for plaintiffs on substantial evidence.

Defendant relies upon three cases: Ringling v. Mahurin, 59 Mont. 38, 197 P. 829; Robinson v. Laffon, 131 Mont. 446, 311 P.2d 768; and Harvey v. Havener, 135 Mont. 437, 340 P.2d 1084. We have carefully considered the holdings in these cases in light of the facts presented in the instant case and find them inapplicable. In fact, two of the cases on the facts presented here support the position of plaintiffs.

Here, defendant not only had actual and constructive notice but he failed to properly search the records before proceeding to spend considerable funds. Under such circumstances he went ahead and located claims and he cannot now argue that he had no notice of the prior claim of plaintiffs. His allegation that the 5 D's and an M claim went back to 1960 did not convince the jury for it heard the testimony of Stobie to the effect that in 1960

there were only four children with names beginning with "D" and that therefore they could not have so named the claim at that date. The jury found that plaintiffs had such possessory interest to the surface area as to support an action in trespass.

Defendant next attacks the legality of the certificate of location of plaintiffs, its recording, the fact that it does not set forth its location in Sanders County, and that the claim does not have some natural or permanent monument to identify it. We find no merit in this attack. The certificate of location was in the hands of defendant when he first found it at the mine site and such actual notice cures any defect of title, assuming that the certificate should have referred to some natural object or monument. Harvey v. Havener, 135 Mont. 437, 340 P.2d 1084. The federal law concerning "multiple use" has no application to the facts present in this cause of action and need not be discussed.

Neither do we find merit in defendant's allegation concerning the annual assessment work. It is not how much is done annually but that it is done annually. Section 50-704, R.C.M. 1947, sets forth the requirements for annual assessment work and from the evidence introduced here the jury properly found that the statute had been complied with by plaintiffs. If defendant had properly searched the records of Sanders County he would have found plaintiffs' affidavit of performance of annual work. Section 50-704, R.C.M. 1947, notes that such affidavits are prima facie evidence of the facts stated therein.

Woven into the issues raised by defendant (summarized as Issue 3 herein), is the question of damages done to the D-7 Cat and his failure to recover such damages. Again, this was a jury question. It found defendant had bulldozed his way onto plaintiffs' claim and done such damage that it was necessary to obtain a restraining order to stop him. Counsel for both parties met and

- 8 -

and an agreement was made to allow defendant to remove the D-7 Cat from plaintiff's claim, but he did not do so. He failed to mitigate the damages and in fact contributed to the damages by failing to have antifreeze in the radiator at a time of the year when it was necessary. This, plus the fact that plaintiffs had drained the fuel from the D-7 Cat, was before the jury and it found no damages due defendant.

We have examined the court's instructions and find that when read together the jury was fully and properly instructed. Defendant's issues concerning various proposed instructions are without merit.

The judgment is affirmed.

_____Conway Harrison_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.

- 9 -

Justices Castles and Haswell specially concurring:

We concur in the results reached in the majority opinion, but not in all that is said. We would simply rule that the appellant has not sustained his burden of showing any error in the proceedings in the district court.

_Wesley Castles_

_Frank I. Haswell_

Associate Justices